The People of the State of New York ex rel. Joel Brink, Respondent, *v*. Eugene Way et al., Appellants.

Election Law — Mandamus Will Not Lie to Compel Recount of Ballots Returned to Ballot Box for Preservation. The Election Law (L. 1896, ch. 909) does not impose the duty, nor does it confer authority, upon a town board of canvassers to reconvene and recount the votes cast in an election district upon its attention being called to violations of the statute by some one or more of its members, after the ballot box has been locked and sealed and delivered to the lawful custodian thereof for the preservation of ballots for the period of six months. While section 111 authorizes the court to open the boxes and permit their contents to be examined, it does not confer the power to direct a recount, and, therefore, mandamus will not lie to compel it.

*People ex rel. Brink* v. *Way*, 92 App. Div. 82, reversed.

(Argued April 27, 1904; decided August 5, 1904.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered

March 17, 1904, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus.

The facts, so far as material, are stated in the opinion.

*Augustus H. Van Buren* for appellants. The court had no power to grant the order appealed from. (L. 1896, ch. 909; *Matter of Member of Assembly*, 18 Misc. Rep. 391; *People ex rel.* v. *Board of Canvassers*, 66 Hun, 265; *People ex rel.* v. *Earley*, 16 Misc. Rep. 603; *People ex rel.* v. *Bourke*, 30 Misc. Rep. 561; *People ex rel.* v. *Bd. Suprs.*, 135 N. Y. 522.) A peremptory writ of mandamus should not have been granted. (*People* v. *R., W. & O. R. R. Co.*, 108 N. Y. 95; *Matter of Haebler* v. *N. Y. P. Exchange*, 149 N. Y. 414; *People ex rel.* v. *Mayor, etc.*, 149 N. Y. 215; *People ex rel.* v. *Suprs. of Westchester*, 73 N. Y. 173; *People ex rel.* v. *Fairman*, 91 N. Y. 385; *People ex rel.* v. *City of Buffalo*, 156 N. Y. 570; *People ex rel.* v. *Board of Canvassers*, 66 Hun, 265; *Matter of Kline*, 17 Misc. Rep. 672.) The court had no inherent power which can be invoked to sustain the order appealed from. (*People* v. *Suprs. of Greene*, 12 Barb. 217; *Morgan* v. *Quackenbush*, 22 Barb. 72; *Hadley* v. *Mayor, etc.*, 33 N. Y. 603; *People* v. *Canvassers*, 44 N. Y. S. R. 738; *People* v. *Livingston*, 79 N. Y. 290.)

*Howard Chipp* and *W. N. Gill* for respondent. The election officers failed to discharge the duties imposed upon them by sections 84, 103 and 110 of the Election Law. (*Matter of Stewart*, 155 N. Y. 549; *Matter of Larkin*, 46 App. Div. 366.) No count in accordance with the commands of the statute having been made, a recount may be had. (*Matter of Stewart*, 155 N. Y. 545; *People ex rel.* v. *Ward*, 62 App. Div. 531; *Matter of Larkin*, 46 App. Div. 366.) The election officers not having performed their duty in compliance with the statute, they may be compelled to do so by mandamus. (*People* v. *Bd. of Aldermen*, 31 App. Div. 438; *People ex rel.* v. *Comrs.*, 149 N. Y. 26; *Matter of Stewart*, 155 N. Y. 545; *People ex rel.* v. *Ward*, 62 App. Div. 531;

*Matter of Larkin*, 46 App. Div. 366; *Matter of Perry*, 88 App. Div. 185.) The order for the peremptory writ of mandamus was properly granted. (*People ex rel. v. Coler*, 34 App. Div. 167; *Matter of Guess*, 16 Misc. Rep. 306; *People v. Lyman*, 53 App. Div. 470; *Matter of Reiss*, 30 Misc. Rep. 234; *People v. Common Council*, 77 N. Y. 503; *Matter of Journal Pub. Co.*, 30 Misc. Rep. 326; *People v. Nostrand*, 46 N. Y. 375; *Headings v. Gavette*, 86 App. Div. 592.)

PARKER, Ch. J. Relator was a candidate for supervisor at the general election of November 3, 1903. According to the returns filed his opponent received one majority. November 21, 1903, relator obtained a writ of peremptory mandamus requiring the town board of canvassers to reconvene "at the town clerk's office in the town of Ulster, on the 17th day of December, 1903, at 2 o'clock in the afternoon, and recanvass the vote cast at the election held November 3, 1903, for supervisor of said town, and in so doing to take and use the corrected return made and filed from election district No. 4, aforesaid, after the said recount and recanvass of the votes therein in the place of the first return made from said district."

Relator claims that the members of the town board of canvassers or some of them failed to discharge their duty in the manner required by sections 84, 103 and 110 of the Election Law in that (1) the chairman did not read off the split ballots; (2) the poll clerks did not tally the same; (3) they were tallied by two inspectors; (4) they were not passed to the other inspectors for verification; (5) defendant McNamee was allowed to handle some ballots; (6) the tally sheet in the town clerk's office contains no entry in the proper column of the number of straight party votes counted for any candidate on the Republican ticket; nor does it contain in the proper column any entry of the number of votes cast for relator on split ballots, but in such column it contains the words "eleven votes" written over an erasure; (7) the tally sheet in the county clerk's office bears evidence of alteration as to the vote for supervisor, and is not signed or certified.

If it is the duty of a town board of canvassers to reconvene and recount the ballots on their own motion upon their attention being called to violations of the statute by some one or more members, then the court had power to grant the writ, for the court has power to compel a recount whenever the statute places upon the town board of canvassers the duty of recounting. Thus section 84 of the Election Law provides that the sum of the ballots cast for any office as shown by the tally sheet must equal the number of ballots voted as shown by the ballot clerks' return of ballots, and that " if it does not, there has been a mistake in the count, and the ballots must be recounted for such office." In such a case, as we see, it is by the statute made the duty of the board of canvassers to recount the ballots, which means that they shall follow the procedure required by the statute for a count of ballots in the first instance. In the event of a failure to make such a recount the court may by mandamus compel it. Any duty which a statute provides that a board of canvassers shall in the future perform may be enforced by mandamus.

Relator's application is not based upon that section however. The facts stated in the affidavits do not bring this case within it. And counsel do not claim that any other provision of the Election Law makes it the duty of the canvassers, or permits them, to make a recount after the ballots have been placed in the ballot box, and is locked and sealed and delivered to the custodian named in the statute ; nor have we been able to find any provision in the statute pointing in that direction. The authority of the court to issue the mandamus, therefore, cannot be rested on the ground that the court could compel the board of canvassers to take such action as the statute requires them to take, for, as we have seen, it does not require nor permit them to make a recount because of any errors or irregularities of the kind and character pointed out by relator's affidavits.

We must, therefore, examine the Election Law to see whether it contains any provision authorizing the court to

12

compel a recount when facts of the nature of those stated in relator's affidavits are brought to its attention.

Section 114 provides in express terms for a recount of ballots *objected to as marked for identification*, and gives the court power in a mandamus proceeding to determine whether the ballot was marked for the purpose of identification, and to order that the votes thereon be excluded on a recount. The section further provides that a like writ may be issued to determine whether any ballot and the votes thereon which have been rejected by the inspectors shall be counted. It will be observed that this section does not embrace a general recount of ballots. *It is limited to ballots required to be specially returned* for examination by the canvassers and by the courts, and not placed in the ballot box before it is locked and sealed. It is confined to those ballots about which there is opportunity for dispute; and they are kept out of the ballot box and attached to the returns, where the court may readily, in the event of mistake, make correction by proper order.

Rule 9, section 110, defines a void ballot, and provides that no vote upon such ballot shall be counted.

Subdivision 3, section 110, which provides for the method of counting, says that "When a ballot is not void and an inspector of election or other election officer or duly authorized watcher shall, during the canvass of the vote, declare his belief that any particular ballot has been written upon or marked in any way for the purpose of identification, the inspectors shall write on the back of such ballot the words, 'Objected to because marked for identification,' and shall specify over their signatures upon the back thereof the mark or marking upon such ballot to which objection is made."

Section 111, which relates to the original statement of the canvass and certified copies, provides that the return of the canvass shall contain a statement of the number of ballots protested as marked for identification, and the number of void ballots; that such void and protested ballots shall be secured in a sealed package filed with the original statement

of the canvass.  It is these ballots that section 114 provides may be recounted by direction of the court, and it is significant that not only is the court expressly empowered to count the ballots, and decide whether those counted were void, and whether those not counted should have been counted because they were not void; but the section in terms provides that the court may enforce its determination by mandamus.

No part of that or any other section of the Election Law brought to our attention authorizes the court to compel a recount of the ballots returned to the ballot box as by law required; but there is a section that authorizes a county judge or a Supreme Court judge to make an order directing that the ballot boxes "*be opened and their contents examined.*" Section 111 provides that after the canvass has been completed, and the proclamation of the result has been made, "*the ballots voted, except the void and protested ballots,* shall be replaced in the box from which they were taken, together with a statement as to the number of such ballots so replaced.  Each such box shall be securely locked and sealed, and shall be deposited with the officer or board furnishing such boxes.  They shall be preserved inviolate for six months after such election, and may be opened and their contents examined upon the order of the Supreme Court or a justice thereof, or a county judge of such county, and at the expiration of such time the ballots may be disposed of in the discretion of the officer or board having charge of them."

We have, then, two provisions of the Election Law conferring authority upon the court — provisions which bear evidence of very careful consideration.  The one provides for a canvass and recount of certain ballots not replaced in the ballot box, and kept out to be examined by boards of canvass, subject to modification by the court.  The other relates to the ballots directed to be replaced in the box, after which the box shall be "securely locked and sealed."  As to the ballots referred to in the last sentence, the statute does not undertake to confer upon the court or a judge thereof the power to direct a recount.  Instead, it authorizes the court to open the

boxes and permit their contents to be examined. There the authority stops; whether wisely or not is of no consequence to the court. The power to regulate the canvass of the ballots, and the subsequent disposition of them, rests with the legislature alone. It could continue the law as it existed prior to 1896, requiring the immediate destruction of the ballots, so that the best evidence of how the people voted was swept away. But instead it provides for keeping the ballots for six months, and further provides that any one of the judicial officers named in the statute may by order permit the box to be opened and the ballots examined.

The object of the preservation of the ballots, and the granting of the power to the court to order an examination of them, would seem to be that it furnishes a further check upon the perpetration of fraud by local boards of canvassers. It accomplishes this, necessarily, because the canvassers know that for six months after the canvass the evidence of how the people voted is to be preserved in such form that it may be used not only to deprive, possibly, the intended beneficiary of the fruit of his office, but also that it may be used against the canvassers in criminal proceedings. That, of course, must necessarily operate as a check upon those who might otherwise be persuaded into wrongdoing.

The evidence thus preserved is the best and most conclusive in proceedings in the nature of quo warranto to try the title to public office, a proceeding formerly embarrassed by the fact that the ballots had been destroyed.

The court, however, secures no more power or authority by this statute than it in terms gives. The language of section 111 considered in connection with that of section 114 makes it very clear that the legislature does not intend to permit the court to order a recount of the votes in the box. And the court has no right to take any power in the premises not granted to it. No one will question that the rules of construction of statutes require this court to hold that when the legislature attempts to confer upon the court power to order examination of the ballots the grant of power does not

extend one iota beyond its terms.   A grant of power by the legislature to the court cannot be carried beyond what is fairly included in its terms.   This section is not intended to confer upon a judge the power to capriciously order ballot boxes to be opened and examined, nor will it be so construed by the courts.   The power is conferred to the end that it may be used in judicial proceedings pending or about to be commenced.

The purpose of the legislature in so framing the Election Law as to continue the policy of preventing the judiciary from sitting in review of the ministerial work of the board of canvassers may without difficulty be conjectured.   That due and orderly procedure of the courts which so well harmonizes with judicial functions is not adaptable to the canvass of votes which the public interest, more than that of the candidates, requires should be promptly carried on.   Occasions have arisen, and will again arise, where the necessity for a speedy disposition of the question of which candidate is entitled to the office is of far more importance than whether the person elected shall lose it.

It is not many years ago when the result in this state was so close on a presidential election that there was great public excitement, charges being made on both sides that representatives of the opposite party were contemplating a subversion of the will of the people as expressed at the polls, and counsel being selected by the representatives of both parties to protect, in the various sections of the state, the interests of the organization employing them as against the contemplated frauds of the other side.   Fortunately our system of ascertaining the outcome of elections made it possible that the result should be known in a short time.   But suppose the law had then permitted what relator's counsel urges we should imply it to mean now — that upon an affidavit asserting that the chairman did not read off the split ballots or that the poll clerks did not tally the same or that they were tallied by two of the inspectors or any one or more or all of the facts stated in the moving affidavits, any one or all of the county judges

and Supreme Court justices could grant orders requiring a recount of the ballots — would that aroused public sentiment have been allayed as promptly as it was? And promptly as it was allayed, all who remember the circumstances will concede that it was not allayed too soon.

Dispatch as well as accuracy is aimed at by the Election Law. The canvass must be made openly and promptly, and under such safeguards as the legislature has prescribed as tending most strongly toward a fair result. The next step is the canvass by the county board of canvassers, who by section 130 of the Election Law are required to meet at the county clerk's office on the Tuesday next after each election. That board is required to proceed at once, and caution on its part is provided for with the object of securing a final canvass of the vote of the county with all reasonable expedition, to the end that it shall in turn be forwarded to the secretary of state.

Now, election in 1903 occurred on November 3d. Under this statute the board was required to meet on the 10th. Ordinarily its work would have been completed four or five days later, and the necessary certificate would have been forwarded to the secretary of state. But the application of relator for the mandamus was made November 21, the reason assigned for the delay being that the first Special Term of the district after the making of relator's affidavit (November 14) was to be held in Troy, November 21. Undoubtedly relator moved with all convenient speed, and if the court had the power to grant the writ of mandamus relator was within his rights.

If such were his rights then equally are they the rights of every other candidate for public office elected at an annual election under the General Election Law, so that whether he is a candidate for supervisor, state senator, member of congress, governor, or is a presidential elector, it matters not, for if one has the right to invoke the aid of the courts to order a recount of the ballots, all have, and if the power exists in the courts to order a recount for the purpose of affecting the canvass of the votes, and bringing about a different result than a

canvass or several canvasses showed on its or their face, it can and will employ the ordinary and usual procedure, which in this case, by reason of the non-existence of a Special Term in the third district, postponed the hearing of the application for the writ until after the time when ordinarily the results of the canvass would have been forwarded to the secretary of state, while the writ of mandamus was granted on November 21 commanding the town board of canvassers to convene for the purpose of making the recount on December 17, a much later date than that at which boards of canvass are required to present the results of the canvass of the county to the state.

It may well be that so leisurely a method would not have been employed had it seriously involved the state canvass; but if the court has any power at all, its action was within it, and it serves to illustrate what could, and probably would, happen in the event of a very close contest in the state involving, for instance, so important and powerful an office as that of governor. The public interest — as distinguished from the interests of the individual candidates, and which is the paramount interest — experience teaches is best subserved by prompt news of the result, such as our Election Law is intended to bring about; and the protection of the rights of the candidate is assured, so far as it is possible for the law to assure it, by throwing around the casting and counting of the ballots all of the safeguards deemed necessary, and by providing for the preservation of the ballots under lock and seal for six months, to the end that conclusive evidence may be produced if a proceeding in the nature of quo warranto is taken by a counted out candidate for the purpose of establishing his title to the office.

I advise that the law be left as the legislature wrote it.

The order should be reversed, with such costs as are allowable in mandamus proceedings in all courts, and proceedings dismissed.

Haight, J. I concur with Parker, Ch. J. The courts will not compel a board of canvassers or any other board or

officer to do an unauthorized act. The Election Law does not, in terms, and I think it does not by implication, authorize a town board of canvassers to reconvene and recanvass the votes cast in an election district in accordance with that which may appear upon a reopening of a ballot box by the court or a judge after the same has been locked and sealed on election night and delivered to the lawful custodian thereof for the preservation of the ballots for the period of six months. Of course, in contemplation of law the custody of the boxes is in the officer specified by the law, but he cannot always be personally present to guard them, and there is reason to apprehend that in numerous cases their actual custodian is some porter, attendant or servant employed in the building. Thieves will break through and steal, and no legislative enactment can prevent them. The same is true with reference to guarding the ballots from substitution by interested and evil-disposed persons. The result of an important election, state and national, may be changed by the disclosures made upon the opening of one of these boxes. It consequently becomes of the highest importance to ascertain whether the box has been tampered with by unlawful hands or remains in the same condition as when locked and sealed after the count of the ballots on election night. The board of canvassers is given no powers to hear, try and determine this question of fact, and the legislature could not have intended that there should be a recanvass of the ballots without its determination.

I, therefore, favor a reversal of the order appealed from.

BARTLETT, J. (dissenting). The relator, Brink, was the Republican candidate for the office of supervisor of the town of Ulster, Ulster county, at the biennial election held with the general election on November 3d, 1903. One McNamee was the Democratic candidate for the same office.

This proceeding seeks to review the action of the election officers in election district No. 4, and of the town board of canvassers of said town. The returns from election district No. 4 showed a total vote of 207, 196 being for McNamee and

11 for the relator.  The canvass of the town board showed a total vote of 667, 334 of which were for McNamee and 333 for the relator.  According to the returns from district No. 4, none of the ballots were blank, rejected as void, or marked for identification; and there were ninety-nine split ballots.

The affidavits upon which the peremptory writ of mandamus was issued alleged, among other things, various irregularities in the conduct of the election and the counting of the vote in district No. 4.

It is unnecessary to consider certain allegations in these affidavits as to illegal voting and irregular and improper action within the polling place prior to the closing of the polls.  The opposing affidavits deny certain of these allegations and the issues thus raised cannot be disposed of under the peremptory writ.

The moving papers, however, contain allegations charging the election officers with failure to observe certain provisions of the Election Law, which are not denied in the opposing affidavits.  The attempted denials are mere conclusions of fact and law that raise no issue.  A few of such denials are : " That said election and the canvass of votes cast thereat were in all things fairly, honestly and legally conducted."  " That the canvass of the votes at said election was conducted in the manner prescribed by law; that the tally sheets of the votes cast for the several candidates for office at said election were duly kept and were duly filed as required by law," etc.  " That the poll clerks made a due and correct return as provided by Section 84 of the Election Law."

The relator charges in substance: (1) That the chairman did not read off the split ballots; (2) the poll clerks did not tally the same ; (3) they were tallied by two of the inspectors ; (4) they were not passed to the other inspectors for verification; (5) the defendant McNamee was allowed to handle some of the ballots ; (6) the tally sheet in the town clerk's office contains no entry in the proper column of the number of straight party votes counted for any candidate on the Republican ticket; nor does it contain in the proper column

any entry of the number of votes cast for relator on split ballots, but in such column it contains the words "eleven votes" written over an erasure; (7) the tally sheet in the county clerk's office bears evidence of alteration as to the vote of supervisor and is not signed or certified.

It also rests upon direct evidence, only partially denied and in a most unsatisfactory manner, that more than eleven votes were cast for the relator in election district No. 4.

It is claimed that these irregularities and the failure to canvass all of the votes cast for relator, are in violation of the Election Law, section 110, subdivision 3, and other provisions, to which reference will be presently made.

On this state of facts the Special Term made an order directing the issuance of a peremptory writ of mandamus, addressed to the board of inspectors of election in election district No. 4 of the town of Ulster; the poll clerks in said election district; the town clerk of said town, and the justices of the peace of said town, who, together with said town clerk, compose the town board of canvassers, commanding a recount and recanvass of the vote in said election district. Thereupon a peremptory writ of mandamus issued, and the defendant duly appealed to the Appellate Division from the order of the Special Term, which was unanimously affirmed.

On the appeal to this court the defendants insist that the Special Term had no power to grant the order from which the original appeal was taken. They point out that section 111 of the Election Law provides for preserving the ballots voted, for a period of six months after the election, securely sealed in the boxes from which they were taken, and that the same may be opened and the contents examined by order of the court, and that at the expiration of such time the ballots are to be disposed of in the discretion of the officer or board having charge of them. The argument of the appellants is that this section authorizes no recanvass or recount, but simply an examination.

As to the alleged irregularities that the chairman did not read off the split ballots; that the poll clerks did not tally the

same; that they were tallied by two of the inspectors; that they were not passed to the other inspectors for verification, they stand undenied and are in clear violation of the Election Law, section 110, subdivision 3, which reads: "The straight ballots, that is, the ballots on which all the candidates on one party ticket and no others are voted for shall be separated from the split ballots and counted, and the number of straight party votes for each candidate shall be entered in gross opposite his name on each tally sheet by each poll clerk. The chairman of the board shall then take the split ballots separately, and announce the vote for each candidate upon each such ballot, in order of the offices printed thereon, and each poll clerk shall make an accurate tally of the same. As the votes on each split ballot are counted, such ballot shall be passed to the other inspectors for verification."

As to the undenied charge that the defendant McNamee, one of the candidates for supervisor declared elected, was allowed to handle some of the ballots, it is additional evidence of the reckless and illegal manner in which this election was held; a flagrant disregard of the law is clearly established in this and other respects.

As to the alleged irregularities that the tally sheet in the town clerk's office shows no entry in the proper column of the number of straight party votes counted for any candidate on the Republican ticket, and that it does not contain in the proper column any entry of the number of votes cast for relator on split ballots, but in such column contains the words " eleven votes" written over an erasure; and also as to the allegation that the tally sheet in the county clerk's office bears evidence of alteration as to the vote for supervisor, and is not signed or certified, it is clear that these alleged irregularities are in violation of sections 84 and 110, subdivision 3, of the Election Law.

We have here a tally sheet that fails to comply in almost every respect with the provisions of law.

Section 111, which deals with the original statement of canvass and certified copies, provides, among other things, as

follows : " Forthwith upon the completion of such original
statement and of such certified copies thereof, and the procla-
mation of the result of the election as to each candidate, the
ballots voted, except the void and protested ballots, shall be
replaced in the box from which they were taken, together
with a statement as to the number of such ballots so replaced.
Each such box shall be securely locked and sealed, and shall
be deposited with the officer or board furnishing such boxes.
They shall be preserved inviolate for six months after such
election and may be opened and their contents examined upon
the order of the Supreme Court or a justice thereof, or a
county judge of such county, and at the expiration of such
time the ballots may be disposed of in the discretion of the
officer or board having charge of them."

It is argued by the appellants that it is the clear reading of
the Election Law that there are two provisions thereof which
confer authority upon the court; one, providing for a recan-
vass and recount of void and protested ballots which are not
replaced in the ballot boxes to be sealed ; and the other, refer-
ring to the voted ballots which are replaced in the ballot boxes
and sealed.   As this case involves only the latter  ballots, it is
necessary to construe the law in regard to them.

The appellants argue that the law provides for but one situ-
ation in which a recount can be had under order of the court,
and that is to be found in section 84, where the form of the
tally sheet is provided for in detail.   The material part of the
section reads as follows : " At the extreme right of such sheet
there shall be a column headed, ' Total number of ballots
accounted for,' in which shall be entered opposite each office
the sum of the total vote cast for all candidates for the office,
together with the number of ballots not wholly blank, on
which no vote was counted for that office, the total number of
wholly blank, and the total number of void ballots, and the
votes cast, if any, for candidates for such office whose names
are not printed upon the ballot.   Such sum must equal the
number of ballots voted, as shown by the ballot clerks' return
of ballots, and if it does not, there has been a mistake in the

count, and the ballots must be recounted for such office." (Jewett's Election Manual, eleventh ed. 1903, pp. 98–9.)

A reading of the entire section in this connection very clearly discloses the legislative intention that where this discrepancy appears at the close of the count there must be forthwith a recount before the final result is announced. This provision does not refer to mistakes or frauds sought to be remedied by a recount compelled by mandamus.

It is also argued by the appellants that the only other object of keeping the ballots in the boxes under seal is for the purpose of producing them in a proceeding in the nature of quo warranto, or some other action to test title to office.

I am of opinion that the Election Law bears no such narrow construction, and if it were possible to so limit and construe it, it would be entirely inadequate to accomplish the results designed by its framers. I am further of the opinion that this court is fully committed to a construction of the law sustaining the position of the relator in this proceeding.

In *Matter of Stewart* (155 N. Y. 545) two proceedings were involved and argued at the same time, seeking the construction of the Election Law. The first was against the board of county and city canvassers of the city and county of New York, asking for a peremptory writ of mandamus, requiring them to summon the election inspectors of eight election districts in the 19th assembly district to correct their returns of the votes cast in such districts for the office of assemblyman and alderman, and directing the county canvassers to canvass the corrected returns. This proceeding was taken under the provisions of the Election Law to have the inspectors make a true statement. (§ 132.) The second proceeding, and the one pertinent at this time, is in aid of the first and asks for a peremptory writ of mandamus, requiring the inspectors of election in the districts named to convene and make correct returns of the votes cast in such district for said office, and directing the county canvassers to canvass the corrected returns.

The court stated in regard to this second proceeding as

follows : "The theory of this latter proceeding is that, inasmuch as the inspectors have through error or otherwise made a false return contrary to their duties under the law, the court must intervene and authorize and, if need be, compel them to make a true return. This is wholly independent of the Election Law itself, and rests upon the fundamental and elemental principle that every public officer can be compelled by the court to perform the duties pertaining to his office. (*People ex rel. Wooster* v. *Maher*, 141 N. Y. 330, 336.) In each of these proceedings the facts and the question of law are identical. It appears that the tally sheets required by the Election Law to be kept as an official contemporaneous record of the count show that in the election districts concerned the petitioners Stewart and Okie received a certain number of votes respectively for member of assembly and member of the board of aldermen, while under the returns of the election district inspectors they received respectively less number of votes, the result being to elect the opposing candidates, Weil and Gregan, respectively, as member of assembly and member of the board of aldermen.

"The question presented by these appeals is whether there is any remedy for the petitioners upon such a state of facts. The main position of the respondents is that the tally sheet, by the terms of the law itself, is made the best and highest evidence of the canvass of the votes, and the so-called original statement or return by the inspectors is an abstract or summary of the facts and data contained in the tally sheet, and only a ministerial act made after the canvass is completed."

It is true that the precise question presented in the case from which quotation is made is not involved in the present proceeding, as it was there claimed that a variation between the tally sheet and the original statement or return made by the inspectors, permitted and required the inspectors to make the latter conform to the former. In the case at bar the tally sheet is attacked and in order to correct it resort must be had to a recount. A situation is presented clearly anticipated by the legislature. In the case before us we have a tally sheet

made out in disregard of the provisions of the statute, in which the defeated candidate is credited with only eleven votes in election district No. 4, written therein in an illegal manner over an apparent erasure. In my opinion the Election Law was intended to reach, in a summary manner, just such cases as are disclosed in *Matter of Stewart (supra)* and in this case.

The Election Law was drawn with great care as to details, and the legislature evidently sought to throw around the voters of the state every safeguard which would permit them to deposit their ballots in secrecy, to have them canvassed accurately and honestly and to preserve the evidence for a period of six months both within and without the ballot boxes.

In *Matter of Stewart (supra)* we pointed out the great importance of the tally sheet in the canvass of the votes under the statute and any subsequent examination of the same. We further quote from the above case (p. 553): "The appellants urge that the language of section 131 of the law, properly construed, shows that the tally sheets do not control the returns, but that the statement of the inspectors is the basis upon which the board of county canvassers must act. It reads, in part, as follows: ' At such first meeting' (of the board of county canvassers), ' or as soon as an original statement of the result of the canvass of the votes cast in such election in every election district of the county shall be produced before such board, or a copy thereof, in case the original cannot be produced, the board shall, from such original statements and certified copies, and the sealed packages of void and protested ballots, proceed to canvass the votes cast in such county at such election.' It is doubtless true that this section contemplates that the board of county canvassers shall act upon the inspectors' statements without recourse to the tally sheets when the statements are unchallenged as to their accuracy, but to hold that the statements of the inspectors are the best evidence of the final result of the election, in case they are attacked for mistake or fraud, would be to render useless the contemporaneous self-proving record of the canvass already discussed.

"The tally sheet is made in the presence of officials and watchers as the canvass proceeds, the result it records as to each office is separately approved and certified by the inspectors to the police headquarters and publicly announced in the polling place.

"To hold that such a document is inferior as evidence to the ministerial statement of the inspectors made after the canvass is completed is to defeat the effort made by the legislature to protect the canvass of the votes so that the recorded will of the people may not be thwarted by the errors or frauds of the inspectors of election. * * *

"We are of opinion that the learned counsel for the appellants is in error when he states in his brief that there is no provision in the Election Law for correction of an erroneous record or mistake made and recorded in a tally sheet. If the tally sheet is attacked as being carelessly or fraudulently kept so that there is no reliable contemporaneous record of the canvass of the votes, *it is the obvious intention of the statute that the boxes of voted ballots preserved for six months under section 111 shall be opened and examined under the order of the Supreme Court, or a justice thereof, in order to determine the actual vote cast."*

If the election officers wilfully or carelessly disregard the mandatory provisions of the Election Law, a party injured may resort to the common-law writ of mandamus, as was pointed out in *Matter of Stewart (supra)* to compel obedience and secure a recount.

This construction of the Election Law has been held in many cases in the lower courts. A few of them are *Matter of Larkin* (46 App. Div. 366); *People ex rel. Maxim* v. *Ward* (62 App. Div. 531); *Matter of Stiles* (69 App. Div. 589).

Inspectors of election are mere ministerial officers, and a peremptory writ of mandamus will issue to compel them to sign a return. (*People ex rel. Stapleton* v. *Bell,* 119 N. Y. 175.)

With the boxes opened it is a mere question of arithmetic to ascertain the result with absolute accuracy. No discretion is

possible. No decision of a question of fact is required and nothing but the purest ministerial duty is to be performed. When it properly appears that this ministerial duty has not been accurately discharged, and that the ballots have not been counted in the manner required by law, or if it appears that they have not been counted as they were cast, whether through fraud, ignorance or accident, the court has power to command the election officers to reassemble and perform the duty which they failed to discharge, by recounting the ballots, and in doing so to observe the safeguards which the statute casts around the process. This evidently was the primary object of the legislature in enacting that the ballots should be preserved. With the new evidence now attainable for the first time the opportunity for fraud or mistake is reduced to a minimum, provided the ballots when preserved may be promptly recounted in a proper case. No statute is needed to expand the common law so as to meet the new situation created by the preservation of the ballots, for its flexibility and its ability to grasp new conditions has always been its strength and pride. When it finds a ministerial duty not done it commands that it be done. When it is established that ballots were not counted or verified by all of the inspectors it is proof that they were not counted legally, and, hence, according to the theory of the law not counted at all. A count by all the inspectors is not satisfied by a count by part. The ballots have not been counted unless all the inspectors counted personally, or personally verified every ballot. If it was established that one inspector did all the work while the others were not present, could it be reasonably contended that mandamus would not issue to compel the inspectors to reassemble and do their duty? Yet the case supposed is not far removed from a count by a part of the officers without verification by the others as required by law. Such a count is not a count, because all who are required to did not unite in making it. This fact alone would compel the writ to be issued. All of the inspectors are required to count, or one to count and the others to verify, and yet this was not done.

13

The inspectors failed to do their duty and they should be required to come together and observe the commands of the statute by each counting or verifying all of the ballots. This is what the writ required. The novelty of requiring a recount by mandamus is owing to the fact that never before could a recount be had. When the legislature ordered the ballots preserved they opened the door to the writ and invited it to enter. The statute makes it possible for the first time for the court to order the election officers to recount and observe the law in so doing. For the first time they can be compelled to do their duty. The writ cannot be issued by the judges authorized to order the ballot boxes to be opened, but only by the Supreme Court, so that the danger of abuse is improbable. The risk is no greater than any citizen may have to run with reference to his life, liberty or property. Our decision in the *Stewart Case* (*supra*) establishes every principle required to affirm the order we are now considering.

It is argued that if a recount and recanvass could be ordered great delay and inconvenience might result from so construing the Election Law as to permit the examination, after the official term had begun, of a candidate whose title to office is attacked.

The case at bar is a very good illustration of how expeditiously the Election Law could be administered. The application for the writ was made as alleged within twenty days after the election, thus recognizing the fact that as the ballots are only to be preserved for a period of six months the law contemplates that any attack upon the accuracy or good faith of the original canvass and count of the votes should be promptly prosecuted. The delay caused in the case before us is due wholly to the action of the defendants, who have exercised, of course properly, their right of appeal rather than proceed with a recount, which would have speedily settled the question whether the election officers, acting ministerially, had performed their full duty under the provisions of the law. No question of discretion is involved.

The disposition made of this case in the courts below was

right, and the order appealed from should be affirmed, with costs.

Gray, O'Brien, Werner, JJ. (and Haight, J., in memorandum), concur with Parker, Ch. J.; Vann, J., concurs with Bartlett, J.

Order reversed, etc.