In the Matter of the Application of CHARLES S. WHITMAN, Appellant, Respondent, for an Examination of Ballots Pursuant to the Provisions of Section 374 of the Election Law.

ALFRED E. SMITH, Respondent, Appellant.

First Department, December 3, 1918.

Elections — inspection of ballots by defeated candidate — statute construed — delay of inspection until issuance of certificate of election to rival candidate — proper case for inspection — time of inspection to be fixed by court — notice to other candidates — inspection may be had before board of elections — simultaneous opening of ballot boxes — costs and expenses.

Section 374 of the Election Law, relating to the preservation of ballots not void or protested, and providing for an examination thereof by a candidate for political office, was not inadvertently enacted by the Legislature,

and it gives to such candidate an examination as a matter of right in a proper case of any ballots upon which his name lawfully appears as a candidate, and this, whether proceedings to contest the validity of the election are in progress or not.

A proper case for such inspection is shown where the margin of difference between the votes for two leading candidates is but a fraction of one per cent of the total vote, and the petitioner indicates an intention to contest the title to office, if his information as to errors in the count is borne out by an inspection of the ballots.

But such inspection by a defeated candidate should be postponed until one day after the certificate of election is issued, following the completion of the official canvass, to the person apparently elected, even though such certificate cannot be issued until the seventeenth of December, on which day the votes of soldiers and sailors are to be canvassed, especially so where there is no claim whatever of fraud and no proof of any errors or irregularities.

The time for such examination is to be fixed, not by the petitioner, but by the court.

Moreover, such postponement of the examination is warranted under the circumstances, in that it affords opportunity to all interested candidates to examine the ballots at the same time, instead of having a series of separate examinations which may result in injury to the ballots.

The inspection of such ballots need not be ordered under the supervision of a justice of the Supreme Court, but may be had under the supervision of the board of elections at its office or at other places which said board may designate.

It was not unreasonable for the court to order fifteen ballot boxes to be opened at different places simultaneously, although it may require the presence of many counsel.

The order for examination need not provide that the petitioner give notice to every candidate whose name is printed on any ballot of the day, hour and place when the inspection is to be had.

The petitioner should not be required to pay the expenses incurred by the candidate apparently elected.

CLARKE, P. J., and SMITH, J., dissented in part, with opinion.

CROSS-APPEALS by the petitioner, Charles S. Whitman, and by Alfred E. Smith, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 21st day of November, 1918. The petitioner, Charles S. Whitman, appeals from so much of said order as provides for a postponement of the examination of the ballots until after the issuance of a certificate of election of Governor by the Secretary of State. Alfred E. Smith appeals from said order in so far

as it grants the application herein; authorizes the examination of the ballots; provides that such examination be made under the supervision of the board of elections at its office or at other places which the said board may designate; directs the said board and the clerks of the counties of New York and Bronx to produce ballots, etc., at such place or places, and directs that at least fifteen election districts shall be examined simultaneously, and he also appeals from said order in so far as it does not contain a condition that the examination be conducted in the presence of and under the supervision of a justice of the Supreme Court; that the ballots be not handled by any one other than a duly appointed regular clerk or deputy clerk of the Supreme Court; that prior to the examination of the ballots cast in any Assembly district the petitioner give notice to every candidate whose name is printed on any ballot cast in such district, of the day, hour and place when the examination of the ballots in such district is to be made, and that the petitioner deposit cash or a bond sufficient adequately to indemnify Alfred E. Smith for the expense of watchers and other help incident to the examination.

*Abraham S. Gilbert* and *Herbert R. Limburg* of counsel [*Emil E. Fuchs*, attorney], for the appellant, respondent, Charles S. Whitman.

*Abram I. Elkus* of counsel [*Edgar M. Cullen*, *John Godfrey Saxe* and *Joseph M. Proskauer* with him on the brief; *Abram I. Elkus* and *James A. Foley*, attorneys], for the respondent, appellant, Alfred E. Smith.

SHEARN, J.:

These are cross-appeals from an order made at Special Term on notice permitting the applicant, Charles S. Whitman, pursuant to section 374 of the Election Law, to have an examination of all of the ballots, used, furnished or voted at the general election held November 5, 1918, within the counties of New York and Bronx, upon which the name of said Charles S. Whitman appeared as a candidate for Governor, and directing that, in addition to the ballots, there be produced for examination simultaneously therewith all stubs, envelopes and sealed packages of unused official ballots. The order

provides that " Such examination shall commence at 9 o'clock A. M. on the day following the issuance of the Certificate of Election as Governor by the Secretary of State, as provided by Section 443 of the Election Law, and continue thereafter daily without intermission so far as possible, to the end that such examination be completed at the earliest possible moment." It appears that the certificate of election cannot be issued this year until after the seventeenth of December, on which day the votes of the soldiers and sailors are to be canvassed. The appellant Charles S. Whitman contends that the examination should be had forthwith and, in effect, that the granting of any delay, even for this brief interval, was either beyond the power of the Special Term or, if within its power, constituted an abuse of discretion. The appellant Alfred E. Smith, a rival candidate for the same office, who, according to the papers before us appears to have a plurality of some 7,000 votes exclusive of the uncanvassed votes of the soldiers and sailors, contends that the order was not warranted by the facts stated in the petition and further, that, if warranted, the order should be modified by imposing certain terms and conditions. The fundamental question involving the right to have any examination upon the facts stated in the petition should be first examined.

Section 374 of the Election Law (Consol. Laws, chap. 17; Laws of 1909, chap. 22), entitled: " Preservation of ballots not void or protested," is an outgrowth of section 111 of the earlier Election Law (Gen. Laws, chap. 6; Laws of 1896, chap. 909), and prior to amendment by chapter 821 of the Laws of 1913 simply provided that the ballots shall be preserved inviolate for six months after an election and " may be opened and their contents examined upon the order of the Supreme Court or a justice thereof, or a county judge." The amendment of 1913 rewrote the section, entitled: " Preservation of ballots," so as to include a provision for replacing the stubs as well as the ballots, except protested, void and wholly blank ballots, in the boxes from which they were taken and depositing them with the board of elections together with the separate sealed package of unused official ballots, and added the provision: "Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon

which his name lawfully appeared as that of a candidate; but
the court shall prescribe such conditions as of notice to other
candidates or otherwise as it shall deem necessary and proper."
(See, also, Laws of 1916, chaps. 31, 537, amdg. said § 374.)
The Direct Primary Law of 1913 was enacted in chapter 820
of the Laws of 1913 and contained a provision amending
section 88 of the Election Law (as renum. from § 62 and
amd. by Laws of 1911, chap. 891), entitled: "Preservation of
records and papers," in which provision was made for an
examination as follows: "In the case of a contested nomina-
tion for office or a contested election to a party position any
candidate shall be entitled as of right to an examination in per-
son or by authorized agents of any primary ballots upon
which his name lawfully appeared as that of a candidate;
but the court shall prescribe such conditions, as of notice
to other candidates or otherwise, as it shall deem to be neces-
sary and proper." (See, also, Laws of 1918, chap. 323, amdg.
said § 88.)

Counsel for the appellant Smith contends that the pro-
vision for inspection of the ballots found in the act of 1913
was inadvertently enacted by the Legislature. In view of the
presumptions attaching to legislative enactments, strong evi-
dence should be produced to warrant the court in making any
such pronouncement. No evidence is produced. On the con-
trary, the history of the struggle to obtain for a candidate a
right to inspect the ballots in the boxes persuades one that the
legislation was anything but inadvertent. The protracted and
bitterly contested efforts to obtain an inspection following the
New York city mayoralty election of 1905 are still fresh in
mind. True that endeavor was not based upon former section
111 but upon former section 84, but the intent of the act was
carefully considered and, in order to show it, reference was
had to section 111. The Court of Appeals in *Matter of Hearst*
v. *Woelper* (183 N. Y. 274), referring to section 111, quoted
with approval the language of its previous decision in *People
ex rel. Brink* v. *Way* (179 N. Y. 174): "The language of section
111 considered in connection with that of section 114 makes it
very clear that the Legislature does not intend to permit the
court to order a recount of the votes in the box. * * * The
power is conferred to the end that it may be used in judicial

proceedings pending or about to be commenced." The court further said in *People ex rel. Brink* v. *Way:* " This section is not intended to confer upon a judge the power to capriciously order ballot boxes to be opened and examined, nor will it be so construed by the courts.

When the Legislature amended the act in 1913 and provided that the inspection might be had as a matter of right, it is only fair to assume that the Legislature had in mind the difficulties that had been cast in the way of obtaining an inspection of the voted ballots in the boxes and that when it recast section 111 and provided in the new section 374 that an inspection should be a matter of right, it meant what it said. This conclusion is strongly fortified by what was said by the Court of Appeals, after the amendment, in *Matter of Quinn* (220 N. Y. 623), an application for an inspection under section 374, namely, that the provision " is broad enough in its terms to entitle any candidate voted for at the time of a general election to an examination *as of right* in a proper case of any ballots upon which his name lawfully appears as that of a candidate whether the validity of the election is in controversy or not." This shows that the decisions rendered previous to the amendment, to the effect that the ballot boxes could only be opened in judicial proceedings, are no longer in point and that it is immaterial whether proceedings to contest the validity of the election are in process or not.

In *Matter of Rush* (101 Misc. Rep. 319; affd., 180 App. Div. 889) there was a similar application under the companion provision embodied in section 88 of the Election Law, relating to primary elections. The good faith of the application was attacked, but this court held with the Special Term that the examination was a matter of right, although the provision in the Primary Law is not couched in terms as broad as in the Election Law, for, as above quoted, the Primary Law limits the inspection to the " case of a contested nomination for office or a contested election to a party position."

Stress is laid upon the fact that there is no proof of any fraud or irregularity set forth in the petition and it is contended that the words found in the *Quinn* case " in a proper case " imply that there must be some showing of fraud, error or irregularity to warrant an order for an examination of the

voted ballots.  If the Legislature had intended this to be prerequisite to an inspection, it would have been a very simple matter to have said so.  As an inspection is now given as a matter of right, and this was enacted after the courts had held that under the previous section the courts would not act except for good cause shown, we should be going far if we attempted to read any such proviso into the statute.  I do not go so far as to say that if it appeared to the court that the inspection were sought for an improper purpose, say to settle a wager on the plurality, or that if it had no legitimate purpose whatever, the application might not be denied, for the court does not act in a ministerial capacity in making such an order; its judgment must be satisfied.  That the purpose is a proper one sufficiently appears in this case, for it is shown that the margin of difference between the two leading candidates, while substantial, represents but a fraction of one per cent of the total vote, and the petitioner indicates an intention to contest the title to the office if his information as to errors in the count is borne out by the inspection of the ballots.  While the facts recited in the petition are meagre, especially as the petition seems to indicate that the application is being made, not on the initiative of the petitioner himself, but because the chairman of the Republican State committee has requested him to proceed, nevertheless, having in mind the salutary purpose of the section and the evident intent of the Legislature to do away with the necessity of making out a case of fraud, error or mistake, I think that the order was properly made.

That brings us to the question whether the examination should be forthwith or should, as the court in its discretion provided, be postponed until one day after the certificate of election is issued, following the completion of the official canvass.  The remedy is a summary one and an examination should be had with reasonable expedition, for the sooner the ballots are examined the less danger there is of their being tampered with.  In a case where there is any substantial proof of fraud or of grave errors or irregularities the importance of a speedy inspection of the ballots at the earliest possible time is manifest.  In this case, however, there is no claim whatever of fraud and no proof of any errors or irregularities.

Neither does the petition contain any statement of any ground upon which an immediate inspection should be ordered. Two questions then arise. One is whether the time for the examination is to be fixed by the petitioner or by the court and, if by the court, whether the time fixed in this case provides for a reasonably expeditious examination. The statute does not provide that the applicant shall dictate the day upon which the examination shall proceed. Clearly this is a function of the court, as it is in all cases where an order is required commanding a thing to be done and no particular time is specified by statute. The real question, therefore, is whether or not, under all the circumstances disclosed, the learned Special Term abused its discretion in granting a brief postponement of the examination until one day after the issuance of the certificate of election, which follows as a matter of course the conclusion of the official canvass.

It is well known that in counties as large as New York and Bronx it is not unusual after a general election to have numerous applications for an examination of the voted ballots made by candidates for various offices, and that such examinations involve re-examination of the same ballots over and over again. It is very undesirable to have the ballots handled more than once if it is possible to avoid it, for, apart from any intentional alteration of the ballots, it may readily happen that careless handling, even by the officials of the board of elections, will result in torn ballots, finger prints and smudges which may seriously impair, if not destroy, the value of the ballots as evidence in a subsequent action to try title to office. The papers in this case show that in the recent quo warranto action of *Delehanty* v. *McIntyre*, although the plurality of ballots as they appeared in the courtroom was over 800 in favor of the plaintiff, the jury found in favor of the defendant upon the issue of fact as to whether the ballots were then in the same condition as they were on election night. In proceedings prior to that trial a large number of ballots had been examined on more than one occasion at the instance of candidates for different offices from the office involved in that action. Thus an order improvidently granted, without due regard to allowing a reasonable time in which to permit all candidates to join in an application for one general examination,

First Department, December, 1918.      [Vol. 185.

might serve to destroy the efficacy of the only remedy that now exists to insure the possession of office by the person actually elected, namely, an action in the nature of quo warranto. This was doubtless in the mind of the Legislature when it provided that, in granting the order, " the court shall prescribe such conditions as of notice to other candidates or otherwise as it shall deem necessary and proper." By the time the official canvass is finished, usually only a matter of a few weeks, every candidate is in a position to know whether an examination of ballots is necessary or desirable as a foundation for future contest of title to office. Postponing the examination until the official canvass of the returns is completed thus serves the double purpose of affording ample notice to all candidates who may be interested or affected, as the statute contemplates, and, at the same time, of making one examination of the ballots suffice for all interested candidates. The opinion of the learned justice at Special Term shows that this consideration weighed heavily with him in fixing a date for the examination. (105 Misc. Rep. 74.)

It would, of course, be entirely different if the examination could affect the result of the canvass of the returns. But it has been repeatedly held that the examination under the former section 111 did not provide for a recount or recanvass of the ballots (*People ex rel. Brink* v. *Way*, 179 N. Y. 174; *Matter of Hearst* v. *Woelper*, 183 id. 274) and it has been held by the Court of Appeals in *People ex rel. Brown* v. *Freisch* (215 N. Y. 356, 369) that the amended section 374 does not grant such jurisdiction but that " the authority therein conferred is limited to an examination of the ballots." Although counsel darkly hint that there is some way, which they do not disclose, whereby the inspection may affect the canvass and the issuance of a certificate of election, there is no such way known to the law, so far as we have been able to discover.

Additional reasons readily suggest themselves, showing the propriety of having the examination follow upon the issuing of the certificate of election in this case. It is true that there is no necessary connection between the official canvass of the returns and an inspection of the ballots in the boxes. But in a close election the necessity for a candidate

being represented by counsel upon the official canvass is obvious. Where a State office is involved and the canvass proceeds in so many counties as there are in the great State of New York a considerable burden is imposed upon a candidate in protecting his interests all over the State during the canvass. When at the same time he is compelled to have other sets of counsel representing him in court or before the board of elections on inspection of the ballots the burden becomes a real hardship unless either the candidate is a man of large means or a sufficient number of lawyers, having the ability and special training that election contests require, volunteer their services. This circumstance alone would be sufficient to warrant the court in postponing the inspection until after the brief period required for the official canvass, especially in a case where no ground is stated for a forthwith examination and there is no claim of fraud or proof of error or mistake.

It is said, in opposition to this view, that if the court has the right to postpone the examination for three weeks it has the right to postpone it for three months, or even longer, and as such a protracted postponement would, in effect, be a denial of the right to an examination, it must be that the court has no right to grant any postponement whatever. I fail to see the force in this argument. It fails to take into account the reasonableness of the time fixed. We should have no difficulty in holding that a postponement of the examination for three months was an abuse of discretion and tantamount to a denial of the right afforded by the statute, for such it would clearly be. It is equally clear that in the case with which we are dealing, where there is no claim of fraud and no proof of any error or irregularity, and where the time allowed merely permits a reasonable time for all interested parties to have notice of the examination, and thus avoid more than one handling of the ballots, there has been no denial of any right, but, on the contrary, a prudent and sensible exercise of discretion.

The appellant Smith insists that the inspection should be had in the presence of and under the supervision of a justice of the Supreme Court instead of under the supervision of the board of elections at its office or at other places which the board may designate. I think that the board of elections

can be absolutely trusted to carry out the inspection fairly and strictly according to the terms of the order. So far as past experience goes, nothing is shown to the contrary. There is no sufficient ground presented for taking a justice of the Supreme Court out of his regular assignment and transferring him for two or three weeks to such work as this. It is to be borne in mind throughout that there is no fraud charged, and that there is to be no recanvass of the ballots, but merely an inspection of the ballots which will in no case pass out of the hands of the representatives of the board of elections.

The appellant Smith complains of having fifteen boxes opened simultaneously. This is somewhat of a hardship, requiring as it does so many counsel to be present, but in the interest of expedition and in view of past experience disclosed by the records in election cases it is not an unreasonable provision.

The appellant Smith contends that the order should contain a provision that the petitioner give notice to every candidate whose name is printed on any ballot of the day, hour and place when the inspection is to be had. This is unnecessary in view of the fact that the examination does not take place until the canvass is finished by which time, in the usual course, all applications for inspections should be ready. Justices in granting such orders would doubtless take notice of the order in this proceeding and provide for a simultaneous inspection.

The appellant Smith finally contends that the petitioner should be required to pay not only the expenses of the board of elections and his own clerical help but should also be required to pay the expenses incurred by the appellant Smith. It will be readily seen that such a condition, if made a precedent, would practically debar any candidate from obtaining an inspection unless he were a man of wealth. This would be both unfortunate and unfair and would run directly counter to the statute which, as above pointed out, now makes the inspection a matter of right.

The order should be affirmed, without costs.

DOWLING and MERRELL, JJ., concurred; CLARKE, P. J., and SMITH, J., dissented.

CLARKE, P. J. (dissenting):

I dissent in one particular from the decision of the majority of the court. While the learned court at Special Term granted the application for the examination of the ballots, it provided: " Such examination shall commence at 9 o'clock A. M. on the day following the issuance of the Certificate of Election as Governor by the Secretary of State, as provided by Section 443 of the Election Law, and continue thereafter daily without intermission so far as possible, to the end that such examination be completed at the earliest possible moment."

In my opinion, there is no warrant in law for the delay. The order should have provided that the examination commence forthwith, in order that such examination be completed at the earliest possible moment.

Our election laws evidence a steady purpose to insure to the citizens of the State a fair election and an honest count, to the end that all men may accept with confidence the announced result and that those elected may take office with clear title. As it is of the utmost importance that no interregnum occur, the law provides for a prompt decision by the several boards of inspectors, who, in their several districts, are to canvass the vote and announce the result as soon as possible after the close of the polls on election night and forward their returns to the board of elections and the county clerk. The canvass of such returns is to be made shortly thereafter by the board of county canvassers, who in turn forward the results to the Board of State Canvassers, in the case of State officers, who canvass said returns and issue the certificate of election based thereon to the successful candidate.

The law since 1896 has provided for the preservation of the original ballots. Section 374 of the Election Law (Consol. Laws, chap. 17 [Laws of 1909, chap. 22], as amd. by Laws of 1913, chap. 821, and Laws of 1916, chaps. 31, 537) now reads as follows:

" § 374. Preservation of ballots. After the last tally sheets and returns are completed, and all the stubs and ballots, except the protested, void and wholly blank ballots, are replaced in the boxes from which they were taken, each box shall be securely locked and sealed, and deposited, by an

inspector designated for that purpose, with the officer or board furnishing it, together with the separate sealed package of unused official ballots. The boxes and packages so deposited shall be preserved inviolate for six months after the election, except that they may be opened and their contents examined upon the order of any court of competent jurisdiction or may be opened by direction of a committee of the Senate or Assembly to investigate and report upon contested elections of members of the Legislature voted for at such election and their contents examined by such committee in the presence of the officer having the custody of such boxes. Unless ordered to be preserved by such a court, or unless an examination by such a committee be pending, they shall be opened and their contents destroyed after six months, except, that in a year in which a President of the United States is to be elected, in counties in which no contest has been noted, such boxes may be opened and their contents destroyed after four months and the boxes prepared for use at the primary election as provided in section seventy-nine of this chapter. The protested, void and wholly blank ballots shall be preserved as provided in section four hundred and thirty-seven of this chapter. Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon which his name lawfully appeared as that of a candidate; but the court shall prescribe such conditions as of notice to other candidates or otherwise as it shall deem necessary and proper."

The source of this section was section 111 of the former Election Law (Gen. Laws, chap. 6; Laws of 1896, chap. 909) which provided: " Each such box shall be securely locked and sealed, and shall be deposited with the officer or board furnishing such boxes. They shall be preserved inviolate for six months after such election and may be opened and their contents examined upon the order of the Supreme Court or a justice thereof, or a county judge of such county, and at the expiration of such time the ballots may be disposed of in the discretion of the officer or board having charge of them."

The Court of Appeals passed upon that provision in *People ex rel. Brink* v. *Way* (179 N. Y. 174) and *Matter of Hearst* v. *Woelper* (183 id. 274) where the court held squarely that there was no power conferred upon the court to order a recount

of the ballots, saying, " Section 111 * * * quite plainly has for its purpose the preservation of the ballots, which have been counted as valid by the election board, for use in judicial, or legislative, proceedings, as evidence upon which to determine the title to an office assumed." In the latter case Judge GRAY said: " The power to open a ballot box is conferred by section 111 and is confined to an examination of the contents. A good reason may be found for the non-interference of the court with the ministerial work of the election officers in the higher necessity that the result of a public election shall be promptly made known. It is a wiser policy that the result shall not be still left in uncertainty, after its proclamation by the board of inspectors at the close of the canvass. It is impolitic that the administration of governmental affairs should be permitted to be embarrassed through the delays occasioned by a judicial reopening of the canvass, at the instance of any defeated candidate. Some finality of action on the part of the election board was intended and the power to review appears to be confined to the decision upon ballots rejected as void, or as marked for identification (sec. 114), leaving any further examination of the ballots, which have been counted without objection and sealed up, to be made in the proceeding instituted by a defeated candidate to try the title of his successful opponent to the office."

In *People ex rel. White* v. *Board of Supervisors of County of Albany* (192 N. Y. 539), which was an appeal from an order of the Appellate Division in the Third Department, which affirmed an interlocutory judgment of the Special Term sustaining a demurrer to an alternative writ of mandamus, the court answered the second question certified, which was as follows:

" Has the Supreme Court jurisdiction under section 114 of the Election Law or under its general power, authority and jurisdiction to determine in this proceeding as to the validity of the ballots mentioned in said writ, contained in the boxes deposited with the said city clerk, and to order a recount and recanvass of such ballots such as provided by said section 114? " in the negative and affirmed the order. And in *People ex rel. Brown* v. *Freisch* (215 N. Y. 356) the court in pro-

nouncing its opinion said: " While the court may, under section 374 of the Election Law, upon the application of one who is a candidate for office at the election, permit a ballot box to be opened and the ballots upon which the name of the applicant candidate lawfully appears to be examined, the authority therein conferred is limited to an examination of the ballots. Jurisdiction is not granted to a direct recount or recanvass of such ballots." (Citing *People ex rel. Brink* v. *Way*, 179 N. Y. 174; *Matter of Hearst* v. *Woelper*, 183 id. 274.)

It seems to me plain, therefore, that there is no ground for the apprehension, expressed upon the argument in the matter at bar, that to permit an examination of the ballot boxes would interfere with or delay the canvass of the votes or the announcement of the result thereof and the issuance of the certificate of election, because it has been finally and decisively adjudicated by the court of last resort that there can be under the law no recounting of the voted ballots in the sealed ballot boxes which can affect said canvass. The void, protested and wholly blank ballots, which are placed in the envelopes, may be examined, and the board of elections may be mandamused to correct inaccurate returns in regard to them, but that is an entirely independent proceeding, provided for in the Election Law (§ 381, as amd. by Laws of 1913, chap. 821), familiarly followed in every election and a prescribed part of the general process of canvassing the vote. The provision " Any candidate shall be entitled as of right to an examination in person or by authorized agents of any ballots upon which his name lawfully appeared as that of a candidate; " was added to section 374 by chapter 821 of the Laws of 1913, and undoubtedly was the result of the protracted efforts in the McClellan-Hearst election case to obtain evidence to satisfy the Attorney-General that there were proper grounds to authorize a quo warranto proceeding. The first application was denied by the then Attorney-General upon the ground that the applicant had not made out a *prima facie* case. The language seems as broad and comprehensive as it was possible to make it. " Any candidate shall be entitled as of right * * *," and the Court of Appeals in *Matter of Quinn* (220 N. Y. 623) said: " The order should be affirmed under the provisions of section 374 of the Election Law, which is broad

enough in its terms to entitle any candidate voted for at the time of a general election to an examination *as of right* in a proper case of any ballots upon which his name lawfully appears as that of a candidate whether the validity of the election is in controversy or not." (See, also, *Matter of Rush*, 101 Misc. Rep. 319; affd., 180 App. Div. 889.)

But it is claimed that the phrase in the statute " but the court shall prescribe such conditions as of notice to other candidates or otherwise as it shall deem necessary and proper," qualifies the absolute right theretofore conferred. I do not agree with this contention. The clause is separated from the preceding absolute gift of power by a semicolon, and, to my mind, is limited to the notice that has to be given. There are substantial reasons why as prompt an examination as possible of the original ballots in the sealed ballot boxes should be made. Recent election litigation has demonstrated the danger of procrastination. The prosecution of a case of quo warranto at best is long and difficult. A prompt examination may put an end at once to any such action. If a basis for it is disclosed a proceeding may be promptly instituted. Delay affords opportunity for tampering with the boxes. The earlier the examination the stronger the probative value of the evidence.

No good reason has been presented which satisfies my mind that the delay asked for should be allowed. The certificate of election is rarely issued before the end of December. I cannot think the court is justified so to delay the exercise of the applicant's conceded absolute right of examination.

I think the order appealed from should be modified by striking out the words in the 3d paragraph: " On the day following the issuance of the Certificate of Election as Governor by the Secretary of State, as provided by Section 443 of the Election Law," and inserting in lieu thereof, " one day after the entry and service of the order entered hereon," and as so modified affirmed, without costs to either party.

SMITH, J., concurred.

SMITH, J. (dissenting):

I concur in the opinion of Mr. Presiding Justice CLARKE and desire to add only a single sentence. The policy of the

Legislature in enacting laws governing elections has been indicated to make their requirements absolute as far as possible and not discretionary, thus securing certainty in their administration. The only discretion that I read in the statute as to the time when the examination shall be ordered is as to the time necessary in the giving of the notices which may be required and as may be necessary to make preparation for the examination of the ballots to which the candidate is given the absolute right.

CLARKE, P. J., concurred.

Order affirmed, without costs.