The People of the State of New York ex rel. Henry C. March, Respondent, *v.* Andrew J. Beam et al., as Inspectors of Election of the Village of East Rochester, Appellants.

1. Election Law — Void and Protested Ballots — Jurisdiction of Courts to Correct Erroneous Disposition Thereof. Where inspectors at a village election, in spite of written and oral protests, received ballots which were not only unofficial, but objected to as marked for identification, and counted them and then caused them to be locked and sealed up with the valid ballots voted at the election, their action was a violation of section 111 of the Election Law (L. 1896, ch. 909), and the Supreme Court has the power and jurisdiction to command that the ballot box containing these void, unofficial and protested ballots should be opened and those ballots removed and placed in a package and disposed of according to the commands of said section, to the end that the proceedings authorized by section 114 of the act may be instituted if any candidate voted for at such election should so desire.

2. Mandamus — When Writ Directing Correction of Errors Made by Inspectors Is Void for Want of Jurisdiction — Supreme Court Has No Power to Order Recanvass of Ballots. Where a candidate, voted for at such election and declared defeated upon the count of all the ballots voted, official and unofficial and those objected to as marked for identification, institutes proceedings for a peremptory writ of mandamus commanding that the inspectors make a correct canvass and certificate of the result of the election by deducting the votes counted upon the unofficial ballots and upon those marked for identification; that such ballots be indorsed as objected to upon the ground that they were unofficial and marked for identification, and, together with the official ballots, be returned as required by section 111 of the Election Law, and that such inspectors do all things necessary to the end that a correct canvass and certificate of said ballots be made in compliance with the Election Law, an order of the Special Term directing a writ of mandamus granting the relief asked for is erroneous, and the writ, in so far as it commands a recanvass of the votes and a proclamation of the result, is void for want of jurisdiction.

*People ex rel. March* v. *Beam*, 117 App. Div. 374, modified.

(Argued February 20, 1907; decided April 9, 1907.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 31, 1907, which affirmed an order of Special Term granting a motion for a peremptory writ of mandamus to

compel the defendants to re-assemble and correct their certificate of canvass of votes cast at the village election.

The facts, so far as material, are stated in the opinion.

*Merton E. Lewis* for appellants.   The ·Election Law does not authorize the issuance of a writ of mandamus to compel a recount of ballots.   (*People ex rel. Brink* v. *Way*, 179 N. Y. 174; *Matter of Hearst* v. *Woelper*, 183 N. Y. 274; *Matter of Stiles*, 69 App. Div. 589.)   The applicant has mistaken his remedy.   (*People ex rel. Hoyt* v. *Board of Supervisors*, 19 Misc. Rep. 671; · *People ex rel. Lewis* v. *Brush*, 146 N. Y. 60; *Green* v. *Knox*, 76 App. Div. 415.)

*Harvey F. Remington* for respondent.   Mandamus is the proper remedy and the common law will come in in aid of the statute in the issuing and sustaining of the writ of mandamus. ( *Weston* v. *Charleston*, 2 Pet. 449; *People* v. *Schillicn*, 95 N. Y. 132; *People ex rel. Decker* v. *Parmelee*, 22 Misc. Rep. 380; *People ex rel. Stapleton* v. *Bell*, 119 N. Y. 175; *People* v. *Bd. of Comrs.*, 97 N. Y. 37; *People ex rel. Boltzer* v. *Daly*, 37 Hun, 461; *People* v. *Meakim*, 56 Hun, 626; *People* v. *Whitestone*, 71 Hun, 188; *Chittenden* v. *Wurster*, 152 N. Y. 364.)

EDWARD T. BARTLETT, J.   The village of East Rochester, Monroe county, recently incorporated, held its first election of officers on the 13th of November, 1906.   At that election there was but one official ballot prepared by the clerk for the use of the electors, upon which appeared the name of the relator, Henry C. March, as a candidate for president; also the names of two trustees, one for a short term and the other for a long term, a treasurer and a collector.   This ballot contained as a party emblem the wood cut of a house; also on the right side, as required by law, a blank column, with spaces for the names of the five candidates, and a notice to the voter that under the title of the office he could insert the name of any person for whom he desired to vote.   This ticket was called the " People's Ticket."

On the morning of election a large number of unofficial

ballots were brought into the polling place containing nominations for the various offices, naming persons other than those on the official ballot.   This ballot was styled the "Citizens' Ticket," and was headed by one T. Joseph Mitchell as candidate for president.   There were three inspectors of election present on that day; one has since died, and the two survivors are the defendants in this proceeding.

One Frank C. Hamilton swears that at the opening of the polls at such election he objected to the use by the inspectors of any but the official ballots furnished by the village clerk; that at the same time there was handed to the inspectors a package of unofficial ballots, and that such ballots were so handed to the electors by the inspectors over his protest; that he observed the inspectors received both kinds of ballots, according to the choice of the elector, and deposited them in the box for the reception of ballots and the stubs in the box prepared for the stubs taken from ballots legally voted.   He also swears that at the close of the election, before any ballots were opened and before any votes were canvassed, he served upon each of the inspectors of election a written notice, addressed to the board of inspectors, and reading as follows:

"GENTLEMEN.— The undersigned duly qualified voter of said village respectfully demands that you refrain from opening and counting the ballot box containing unofficial ballots received by you at said election held November 13th, 1906. That in case you do open the box and canvass such ballots, or any ballots cast for T. Joseph Mitchell and others, then and in that case that you endorse upon said ballots 'objected to because marked for identification.'   That you specify over your signatures that said ballot is objected to on the ground that it is unofficial and marked for identification by reason of it being entirely blank where endorsement is required to be made.   That you return all of said unofficial ballots so-called, with the void and protested ballots, as required by section 111 of the Election Law.

"(Signed)   FRANK C. HAMILTON,
            "*Watcher for the People's Party.*"

After swearing to the number of ballots cast of both kinds, Hamilton further avers: " I further say that while said ballots were being counted I again requested each inspector to endorse upon each unofficial ballot a statement to the effect that the same was objected to for the reason that it was marked for identification, in that it had no endorsement thereon and could be readily discerned from the official ballot, and that I requested each inspector several times to do up securely all of the 199 unofficial ballots so voted for T. Joseph Mitchell, and to return the same with the void and protested ballots, as provided in section 111 of the Election Law, which the inspectors refused to do." It further appears that all the ballots cast at this election, official, unofficial and protested as marked for identification, were counted and placed in a ballot box which was locked and sealed. The result of this election was that 326 votes were cast for president. The relator received 116 votes, and Mitchell, the candidate heading the unofficial ballot, received 210 votes.

In this condition of affairs application was made to the Special Term for a writ of peremptory mandamus. The petition for the writ asked for various forms of relief. The writ was granted, commanding the inspectors to correct their certificates of canvass, make a correct certificate of the result of the election by deducting the votes counted upon the unofficial ballots, commanding that they indorse upon the unofficial ballots the statement that such ballots were objected to because marked for identification, and that they specify over their signatures that each of said ballots was objected to on the ground that it is unofficial and marked for identification ; and that such inspectors return all of the official ballots cast at such election, with the void and protested ballots, as required by section 111 of the Election Law, and that they make a return and canvass in all respects as required by the Election Law, and that they properly proclaim the correct count and file such statement of canvass with the village clerk of the village of East Rochester in the manner required by law, and that each of said defendants do all things neces-

sary to be done in the premises for the proper discharge of
the duties of their office, to the end that a correct certificate
of canvass of said ballots may be made in the manner pro-
vided by the Election Law.   An appeal was taken to the
Appellate Division, where the order granting the writ in this
form was affirmed on the opinion of the learned judge at
Special Term.

The appellants insist that the court was without jurisdic-
tion to issue this writ of mandamus and ask for an absolute
reversal of the order granting the same.   The respondent
argues that the Supreme Court has full jurisdiction in the
premises.

It is quite clear that the defendants are in flagrant violation
of the provisions of section 111 of the Election Law.   They
had before them not only unofficial ballots, but the same were
objected to as marked for identification.   The section in ques-
tion provides : "Such inspectors shall, whenever unofficial
ballots are voted, return all of such ballots in the package
with the void and protested ballots.   *   *   *   Forthwith
upon the completion of such original statement   *   *   *
the ballots voted, except the void and protested ballots, shall
be replaced in the box from which they were taken, together
with a statement as to the number of such ballots so replaced.
Each such box shall be securely locked and sealed, and shall be
deposited with the officer or board furnishing such boxes.
They shall be preserved inviolate for six months after such
election and may be opened and their contents examined
upon the order of the Supreme Court or a justice thereof or
a county judge of such county, and at the expiration of such
time the ballots may be disposed of in the discretion of the
officer or board having charge of them."   (L. 1896, ch. 909.)

These inspectors, without regard to the command of the
statute which required them to return the unofficial and pro-
tested ballots in a package to the proper authorities, have
caused them to be locked up and sealed with the valid ballots
voted.   The relator, however, seeks not only to have the bal-
lot box unlocked under judicial order and legal scrutiny to

secure the proper disposition of unofficial, void and protested ballots, but demands a recanvass of the vote. We are of opinion that a recanvass of the vote by the board of inspectors and a proclamation of the correct count cannot be compelled by mandamus under the Election Law in view of the recent decisions of this court. (*People ex rel. Brink* v. *Way*, 179 N. Y. 174; *Matter of Hearst* v. *Woelper*, 183 N. Y. 274.) In the former case this court held that while section 111 authorizes the court to open the boxes and permit their contents to be examined it does not confer the power to direct a recount, and, therefore, mandamus will not lie to compel it. The last case cited followed the law as laid down in 179 N. Y. (*supra*).

If any effect is to be given to the language of section 111 that the ballot boxes locked and sealed may be opened and their contents examined upon the order of the Supreme Court, or a justice thereof, or a county judge, it would seem that it was within the power of the Supreme Court in this case, notwithstanding the above decisions, to command that the ballot box containing these void, unofficial and protested ballots should be opened and those ballots removed and placed in a package and disposed of according to the commands of said section, to the end that the proceedings authorized by section 114 of the act may be instituted if the relator should so desire.

If the relator sees fit hereafter to invoke any remedy that is open to him, he is entitled, as a matter of strict legal right, to have these void, unofficial and protested ballots removed from the ballot box wherein they are now unlawfully locked and sealed and disposed of precisely in the manner directed by section 111, as they will be the foundation for any proceeding he may elect to institute in order to secure his legal rights in the premises. It having been settled by the decisions of this court that a recount is not authorized by the Election Law, it is all the more important that if any remedy is open to a defrauded candidate it should be carefully guarded and strictly enforced.

The writ of mandamus in the case before us in so far as it

permits and commands a recanvass of the vote and a procla-
mation of the result is void for want of jurisdiction. The
order and writ should be modified in accordance with the
views expressed in this opinion and as so modified affirmed,
without costs in this court to either party.

Gray, J. (dissenting).   I must dissent from the opinion in
this case.  Its adoption amounts to a judicial amendment of
the Election Law.   The order for the writ in this case does
not, as the opinion seems to assume, provide for the open-
ing of the election ballot boxes and their examination,
simply, as is permitted by section 111 of the Election
Law ; it undertakes to accomplish something very different,
as its mere reading, even as modified by the opinion, will
show.   The defendants, who were the election inspectors, are,
in effect, to recanvass the ballots cast at the election in accord-
ance with the directions of the order.   They are to make cer-
tain indorsements upon the ballots which are in the sealed
ballot boxes and they are to return them separately, with a
statement of their recount; notwithstanding that the ballot
boxes are to be kept inviolate by law.   The Election Law, to
which the relator appeals and upon which the order for the
writ, in terms, is based, in regulating the conduct of elections,
provides for the issuance of the writ of mandamus in only
two cases.   Section 114 provides for such a writ, in review
of the action of the election officers, when what is sought is
the recount of the ballots which have been marked for iden-
tification, or a determination whether ballots rejected as void
shall be counted.   Section 111 of the Election Law, expressly,
requires the ballots which have been voted to be placed in a
ballot box, which is to be locked, sealed and preserved invio-
late for six months after the election, and provides that they
may be only opened and their contents examined when so
ordered by the court.   The only ballots, which may be brought
into court through the instrumentality of a writ of mandamus,
are those which, under section 111, were "secured in a sepa-
rate sealed package" as having been marked for identifica-

tion, or rejected as void. These special provisions of sections 111 and 114, necessarily, exclude by implication any right to the writ of mandamus for the purpose of a recount of the ballots, which are in the sealed ballot boxes, or for any purpose having to do with the handling of such ballots, or with the alteration of the result certified as to such ballots. If the action of the officers with respect to the ballots placed in the sealed ballot boxes is to be the subject of judicial review, it is only possible through a judicial proceeding, in which the right of the incumbent of the office is in contest. Naturally, for the purpose of such a proceeding the court may order, under the provisions of section 111, the opening of the boxes and the examination of their contents; which would then be done, with proper safeguards, by, or under the supervision of, the court. Within the intendment of the Election Law, as is, indeed, the fact, the sealed ballot boxes with their contents, upon the close of an election, have passed out of the hands of the election inspectors. The opinion, therefore, advises a violation of the provisions of the Election Law and is in conflict with what we have held in the cases of *Matter of Hearst* v. *Woelper*, (183 N. Y. 274), and of *People ex rel. Brink* v. *Way*, (179 ib. 174).

That any inherent power resides in the court to make the order, either as it originally was made, or as the opinion modifies it, is, of course, inconceivable, when the Election Law specifies the cases, in which the writ of mandamus may issue to review the acts of the election inspectors.

There is good reason for confining the issuance of the writ of mandamus to the cases specified in section 114. The purpose of the provision of that section and of section 111 is that the results of an election shall not be kept in doubt, nor the public mind be kept in agitation, by ill advised, or frantic, applications of defeated candidates for orders, generally, reviewing the action of the inspectors of election; whether by way of a recount of the ballots voted, or, as it will be in the present case, by ways which result in a recount. The formalities of the Election Law having been complied with, the result may only be con-

18

tested in two ways; partially, by the summary method of mandamus proceedings to review the decision of the inspectors upon the protested, or void, ballots; or, wholly, through the orderly procedure of an action in the nature of quo warranto, instituted by the defeated candidate to try his opponent's right to hold office, upon charges with respect to the election, which challenge the correctness of the whole count and involve the validity of the ballots received and preserved in the ballot boxes. The result of such an action would determine the right to the office and would determine the controversy. It appears to me that the interest of the public is better promoted by such a course. If this relator is right in his contention that the unofficial ballots voted and received at the election in question were illegal and should not have been counted, he should be remitted to such an action against the occupant of the office for which he was a candidate, wherein a final judgment might be rendered determining conclusively the question as between them.

CULLEN, Ch. J., HAIGHT, VANN and CHASE, JJ., concur with EDWARD T. BARTLETT, J.; WERNER, J., concurs with GRAY, J.

Ordered accordingly.