THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* ADOLPH FREISCH et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 3, Town of Hempstead, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* S. FRED AUSTIN et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 6, Town of Southampton, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* J. F. CARWENKA et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 4, Town of Islip, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* WILLIAM JENKINSON et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 2, Town of Huntington, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* FRED A. CROMBIE et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 6, Town of Huntington, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* SAMUEL A. SCOTT et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 10, Town of Huntington, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* W. H. HALLOCK et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 12, Town of Huntington, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* WILLIAM H. MILLER et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 14, Town of Brookhaven, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* WALTER COZZENS et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 9, Town of Hempstead, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* GUSTAVE A. BRUNGER et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 22, Town of Hempstead, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* JOHN GALLAGHER et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 32, Town of Hempstead, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* FARLEY J. HIGGINS et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 5, Town of North Hempstead, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* HUGH M. O'BRIEN et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 9, Town of North Hempstead, et al., Respondents.

FREDERICK C. HICKS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. LATHROP BROWN, Respondent, *v.* CHARLES A. HANNIGAN et al., as Members of and Constituting the Board of Inspectors of Elections of Election District No. 13, Town of North Hempstead, et al., Respondents.

FREDERICK C. HICKS, Intervenor, Appellant.

Elections — authority conferred upon the Supreme Court by section 381 of the Election Law confined to review of protested, void and blank ballots — may correct error in canvass of such ballots — may direct removal from ballot box of ballots canvassed as void only when they are so marked as to be readily identifiable — rules to be observed in proceeding under such section.

1. The authority conferred upon the Supreme Court by section 381 of the Election Law, as amended (L. 1913, ch. 821, § 31), is confined to a review of the protested, void and blank ballots returned by the election officers in the sealed package. It is distinct and separate from any provision of the law relating to the ballots replaced in the ballot box which has been sealed and locked.

2. The statute is not susceptible of a construction which will justify an order of the court directing election officers to open a box of voted ballots months after the close of an election, examine the ballots contained therein, and without any marks of identification appearing on said ballots, aided only by a recollection of the situation as it existed on the night of election day, endeavor to select the identical ballots declared void at the time of the canvass.

3. Where the petition alleges that there were inclosed in the envelope a certain number of void ballots, while the return showed that a greater number had been canvassed for each office, and that the remaining ballots were tied in a separate bundle, marked "protested," and placed in the ballot box, the court may direct the ballot box to be opened, and, if said remaining ballots are found in the separate bundle and marked "protested," that the same be removed from the ballot box and placed in the envelope to be presented to the court upon the hearing of the original proceedings, and if within the recollection of the inspectors, may require that said ballots so identified be indorsed by them in the manner prescribed by the Election Law. In all cases where the petition does not disclose that ballots canvassed as void or protested are so marked or identifiable as to permit the inspectors to immediately select said ballots from those in the box, the court is confined in the examination of the protested, void and wholly blank ballots to such ballots as are found in the envelopes. (*People ex rel. March* v. *Beam*, 188 N. Y. 266, followed.)

4. Where ballots are found in the envelopes that were spoiled or canceled, the court may order them marked as such and placed in the boxes where they properly belong.

5. Any marks or writings made by the inspectors upon ballots which may be removed from the ballot boxes should be preserved,

and additional indorsement made thereon as directed under the order of the court should indicate that it was made pursuant to such order.

6. An order of the court should also be made providing for the preservation of all ballots used or cast at the election in question, so that the same may be available should any further action or proceedings be brought to review the election.

*People ex rel. Brown* v. *Freisch*, 168 App. Div. 370, reversed.
*People ex rel. Brown* v. *Austin*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Carwenka*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Jenkinson*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Crombie*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Scott*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Hallock*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Miller*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Cozzens*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Brunger*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Gallagher*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Higgins*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *O'Brien*, 168 App. Div. ——, reversed.
*People ex rel. Brown* v. *Hannigan*, 168 App. Div. ——, reversed.

(Argued May 28, 1915; decided June 18, 1915.)

APPEAL, in each of the above-entitled proceedings, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 7, 1915, which modified and affirmed as modified an order of Special Term granting a writ of peremptory mandamus in a proceeding instituted under section 381 of the Election Law.

The facts, so far as material, are stated in the opinion.

*William D. Guthrie, Leander B. Faber, Joseph M. Belford* and *Leone D. Howell* for appellant. The order of the Special Term in each case was contrary to law in that it authorized what must in practical effect result in a recanvass or recount of the ballots in the ballot boxes. (*Matter of Towney* v. *Atkins*, 209 N. Y. 202; *People ex rel. R. T. S. Const. Co.* v. *Craven*, 210 N. Y. 443; *People ex rel. Britton* v. *Am. Press Assn.*, 148 App. Div. 651;

*People ex rel. Brink* v. *Way,* 179 N. Y. 174; *Matter of Hearst* v. *Woelper,* 183 N. Y. 274; *People ex rel. McLaughlin* v. *Ammenwerth,* 197 N. Y. 340; *Matter of Hearst,* 110 App. Div. 346; *People ex rel. March* v. *Beam,* 188 N. Y. 266.)

*Percy L. Housel* and *Bertram Gardner* for respondents. The provisions of the Election Law relating to the preservation for judicial review of the void, protested and wholly blank ballots create a substantial right in favor of the relator of which he cannot be deprived. This right being in effect denied at the commencement of these proceedings mandamus was a proper remedy, the orders appealed from were correct and should, therefore, be affirmed. (*People ex rel. Hasbrouck* v. *Supervisors,* 135 N. Y. 522; *Matter of Stewart,* 155 N. Y. 545; *Matter of Perry,* 88 App. Div. 185; *People ex rel. Maxim* v. *Ward,* 62 App. Div. 531; *People ex rel. March* v. *Beam,* 188 N. Y. 266; *People ex rel. Cantor* v. *Bd. of Canvassers,* 165 App. Div. 142; *People ex rel. Smith* v. *Schiellein,* 95 N. Y. 124.) The writs do not command anything unreasonable or impossible of performance and are within the jurisdiction of the court. (McCrary on Elections, 292; Merrill on Mandamus, § 193; *People ex rel. Noyes* v. *Canvassers,* 126 N. Y. 392; *State* v. *Canvassers,* 36 Wis. 498.)

HOGAN, J. At the general election, November 3d, 1914, the relator, Lathrop Brown, and the intervenor, Frederick C. Hicks, were rival candidates for the office of representative in Congress from the first congressional district of the state, composed of the counties of Nassau and Suffolk and a portion of the county of Queens. In ninety-two of the one hundred and eighty-five election districts embraced in the congressional district the relator within twenty days after the election instituted proceedings under section 381 of the Election Law for a judicial investigation of the void, protested and wholly blank

ballots mentioned in the several returns of the inspectors of elections, which proceedings are still pending. Pursuant to the several writs of mandamus issued in said proceedings, sealed envelopes purporting to contain the void, protested and wholly blank ballots cast and canvassed at the general election in the election districts in dispute were produced before the court, opened and the contents of the same examined in court.

From the statement made by the justice before whom the proceedings were pending, such investigation disclosed that the returns made by the inspectors as to void, protested and wholly blank ballots and those found in the envelopes did not agree. In some districts, the number of void ballots found in the envelope did not correspond with or show an apparent relation to the number stated in the returns of the inspectors. In some instances the envelopes contained canceled ballots. In a number of districts it was impossible for the court to determine whether ballots in the envelopes were treated by the inspectors as void or protested or wholly blank, and whether all of the ballots were voted, and if so, how many, and which ones were counted.

In the cases selected for argument before this court, the relator presented verified petitions, alleging, in substance, an abstract of the canvass in each election district and the matters referred to by the justice in his opinion, which appeared upon the opening of the envelopes from the election districts; a failure on the part of the inspectors of election (save as hereinafter considered) to inclose in said envelopes and return to the board of elections with an indorsement of their ruling on said ballots with the objections thereto, if any, and for which, if any, offices the votes thereon were counted in the form prescribed by section 369 of the Election Law, ballots containing votes adjudged by them to be void for the office of representative in Congress and by them returned as void for that office in the official returns made by them; also ballots

adjudged by them void with an indorsement of their ruling thereon with the objection thereto, if any, and for which, if any, offices the votes thereon were counted in the form prescribed by the Election Law for the offices mentioned by them in their returns and by them returned as void for such offices in the official returns made by them; that the inspectors in certain cases had inclosed in the envelopes ballots indorsed " official spoiled ballots " or ballots indorsed "marked for identification; " that the spoiled ballots were improperly placed in the envelopes and the inspectors failed to return said ballots to the box for spoiled and mutilated ballots; that the ballots indorsed " marked for identification " were counted by the inspectors for the office of representative in Congress, and the inspectors neglected and omitted to indorse thereon a memorandum of the objection to such ballots, stating the nature thereon with their ruling thereon, stating that said particular ballots were counted void, or counted blank, or counted for the particular candidates, naming those for whom they were counted as provided by the Election Law.

The petitions of the relator were supported by the affidavit of an inspector of elections in the several election districts, in substance that at the close of the polls on election day all ballots cast were duly canvassed and at the close of the canvass all voted ballots were placed either in the ballot box or in the envelope for void, protested and wholly blank ballots; that no voted ballots were placed in any other place, and no ballots were destroyed, and if any of the void, protested or wholly blank ballots were not found in the sealed envelopes of said ballots they must be in the ballot box with the valid voted ballots.

The court thereupon, in aid of the proceeding pending before it, issued a writ of peremptory mandamus, directed to the board of inspectors of elections in each district, requiring them to reconvene and in the presence

of the relator and the intervenor, their attorneys or counsel, proceed forthwith:

*First.* To unseal and open the ballot boxes and to take therefrom such of the official ballots containing the names of candidates for the offices voted for as they, on their canvass thereof, adjudged or ruled to be void and returned void in the official return for the various offices or either of them.

*Second.* To indorse in ink upon the back of each a memorandum of the objection, if any, made to said ballot or any vote thereon, stating whether it was counted void or counted blank and for which office in each case, or counted for any candidates, naming them, in accordance with their action during the canvass of ballots on November 3d, 1914.

*Third.* To take therefrom the ballots objected to on the canvass of November 3d, as marked for identification, and to indorse in ink on the back of each a memorandum of such objection as made and the ruling thereon, stating whether the same was counted void or counted blank and for which office in each case, or counted for any candidate, naming them in accordance with their action thereon during the canvass of ballots at the close of the polls on November 3d, 1914.

*Fourth.* To sign at the foot thereof by the chairman or one of the inspectors each memorandum and indorsement above directed to be made.

*Fifth.* To inclose the ballots so indorsed in an envelope, seal the same, indorse thereon the designation of the election district, the number and kind of ballots therein contained and the names of said inspectors and to file the same with the board of elections.

*Sixth.* To take the envelopes of void, protested and wholly blank ballots, heretofore returned, open the same and upon such of the ballots therein contained as were adjudged by them void or were objected to or protested on the canvass thereof at the election, to indorse in ink on the

back of each thereof a memorandum of the objection, if any, made to said ballot or any vote thereon and the ruling thereon, stating whether it was counted void or counted blank and for which office in either case or counted for any candidates, naming them, in accordance with the canvass made November 3d and to sign the memorandum at the foot thereof.

*Seventh.* To strike out and initial any indorsement thereon in language or words not authorized by the Election Law.

*Eighth.* To return said ballots to said envelopes and indorse on said envelopes the designation of the election district, the number and kinds of the ballots therein contained and the names of the inspectors and strike out all indorsements upon said envelope inconsistent thereon and deliver said envelope to the board of elections.

*Ninth.* To take from said envelope such of the ballots therein contained as were ballots spoiled and returned by voters and for which new sets of ballots were delivered to such voters, and to indorse or cause to be indorsed thereon the word "Cancelled" and to return said ballots so indorsed to the box for spoiled and mutilated ballots, seal the same and return the same to the board of elections, officer or town clerk as required by law; thereafter, to return to the ballot box for valid votes all ballots now therein and not removed therefrom in pursuance of the foregoing; lock and seal said box and return the same to the proper election board or town clerk.

*Tenth.* Requiring the commissioners of election or town clerk to produce the envelopes of void, protested and wholly blank ballots returned and filed by the board of inspectors and all ballot boxes used in the election district together with the keys to the same to the inspectors of election for the purposes specified in the writ. In case the inspectors of election were unable to identify any of the ballots above referred to, they were to certify said fact under oath in their return to the writ.

In each of the ninety-two cases the order granting the writ commanded the inspectors and election officers to perform one or more of the several acts above set forth in accordance with the alleged situation in each election district.

The intervenor appealed to the Appellate Division, second department, from each of the ninety-two orders granting said writs; fourteen of the appeals were argued, a stipulation having been made that the remaining appeals would abide the event of those selected for argument. The Appellate Division modified the order granting the writ in each case by striking therefrom all provisions requiring the election officials to change or to erase or to strike out any writing made by them on any ballot on election day whereby they sought to comply with the requirements of the Election Law and, as so modified, affirmed the order in each case.

The intervenor appeals to this court from so much of said orders of the Appellate Division in each of the ninety-two cases as affirmed the order of the Special Term granting the writ of peremptory mandamus. By stipulation between the attorneys fourteen of said appeals, including the one orally argued, were selected for argument as fairly presenting all the points involved.

The Election Law formerly provided that all the ballots voted at an election should be destroyed immediately after the inspectors of election complete the canvass and sign the returns. The Election Law for a number of years has provided for the preservation of all official ballots furnished to the various election districts and a return of the same to the board of elections, commissioners of elections, or clerk, as the case may be. It specifically enumerates the duties imposed upon election officers relating to the ballots during the canvass and at the completion of the same prescribes that ballots canceled before delivery to an elector together with ballots spoiled and returned by voters, the latter to be marked " cancelled " by the inspect-

ors, are to be replaced with the stubs of ballots in the box, which is to be securely locked and sealed and returned to the proper officers. Voted ballots are to be returned to the ballot box, which is to be securely locked and sealed, and delivered to the board of elections or other designated officers. Ballots designated as protested, void and wholly blank ballots are not to be replaced in the ballot box, but are to be preserved in a separate sealed package and returned to the proper election officers.

These provisions of the Election Law minimize the opportunity for fraud at elections and preserve to candidates for public offices many rights not possessed by them prior to the year 1896. A preservation of the ballots renders available the best evidence in proceedings instituted to try the title to public office, not only as between rival candidates for office, but as well in actions brought by the people of the state against individuals who may intrude into or usurp public office.

The proceedings in question were instituted under section 381 of the Election Law, as amended, L. 1913, ch. 821, section 31, which reads:

" If any statement of the result of the canvass in an election district shall show that any of the ballots counted at an election therein were protested or were canvassed as wholly blank or void, a writ of mandamus may, upon the application of any candidate voted for at such election in such district, within twenty days thereafter, issue out of the Supreme Court to the board or body of canvassers, if any, of the return of the inspectors of such election district, and otherwise to the inspectors of election making such statement, requiring a recanvass of such ballots. If the court shall, in the proceedings upon such writ, determine that any such ballot was improperly canvassed, it shall order the error to be corrected. Boards of inspectors of election districts, and boards of canvassers, shall continue in office for the purpose of such proceedings."

The authority conferred upon the court by this section is confined to a review of the protested, void and blank ballots returned by the election officers in the sealed package. It is distinct and separate from any provision of the law relating to the ballots replaced in the ballot box which has been sealed and locked; it is confined to the three several kinds of ballots mentioned, (a) protested ballots, (b) void ballots, (c) blank ballots.

Sections 371 and 358 of the Election Law refer to and define protested, void and blank ballots. Under section 371 of the law, any person entitled to be present at the canvass of votes may require an inspector to exhibit to him a ballot then being canvassed fully opened that he may fully and carefully read and examine the same. Objection may be made to the counting of any ballot, and it is the duty of the board of inspectors before canvassing any other ballot to rule upon the objection made. If the objection is continued after the ruling thereon, the chairman of the board, or, if he refuses, one of the other inspectors, is required to write in ink upon the back of the ballot a memorandum of the objection and of the ruling, the memorandum of the ruling to be in the words " counted void " or " counted blank " or " counted for (naming the candidates, etc.)." The memorandum of the objection shall be " objected to," followed by a brief statement of the nature of the objection, and the indorsement shall be followed by the signature of the chairman or other inspectors.

If objection is not taken to the counting of a ballot which is wholly blank or wholly void, the same shall be indorsed in ink by the chairman or one of the inspectors, with the words " wholly blank " or " wholly void " as the case may be, followed by the signature of the chairman or other inspector. Section 358 prescribes in detail the ballots that shall be declared void.

While the court may, under section 374 of the Election Law, upon the application of one who is a candidate

for office at the election, permit a ballot box to be opened and the ballots upon which the name of the applicant candidate lawfully appears to be examined, the authority therein conferred is limited to an examination of the ballots. Jurisdiction is not granted to a direct recount or recanvass of such ballots. (*People ex rel. Brink* v. *Way,* 179 N. Y. 174; *Matter of Hearst* v. *Woelper,* 183 N. Y. 274.) Under section 381 of the Election Law, above quoted, the jurisdiction of the court is limited to cases where the result of the canvass discloses that the ballots *counted* at an election were protested or were canvassed as wholly blank or void. If the court shall determine that *any such* ballot or ballots were improperly canvassed it shall order the error to be corrected.

Examination of the fourteen records before the court discloses that in election district number 4, town of Islip, three ballots marked protested for governor were found in the envelope returned from that district. The petition in that case alleges that such ballots were counted for representative in Congress. In the remaining districts, except election districts numbers 6 and 10, town of Huntington, hereinafter referred to, the allegations of the several petitions are practically alike in substance, that the inspectors omitted to inclose ballots returned as void with indorsements of rulings thereon and objections thereto, and for what office or offices, if any, the same were counted.

In election district number 10, town of Huntington, the return discloses 301 votes cast, of which 24 were void for each candidate on the ticket. The envelope contained six void ballots. The petition alleged upon information and belief that the ballots returned as void for that district, which were not inclosed in the envelope, were tied together in a separate package indorsed "protested" and placed in the ballot box.

In election district number 6, town of Huntington, the return showed that 336 votes had been cast, whereof five

were void for each officer on the ticket. The envelope contained nineteen ballots; one of a group of five ballots was indorsed "Void ballots on marking five ballots." Two ballots were indorsed one "spoiled" and one "destroyed by pencil going through." In this case the mandamus did not require the ballot box to be opened, but was confined to a command that the poll clerks remove the spoiled ballots from the envelope, indorse thereon "cancelled" and return the same to the box for spoiled or mutilated ballots, and to indorse in ink on the remaining ballots a memorandum of the objections, if any were made, and rulings thereon, stating whether the ballot was counted void or counted blank, and for which office in either case or counted for any candidate, naming them, in accordance with the action of the inspectors during the canvass of the ballots on November 3, 1914.

With the exception of election district number 4, town of Islip, and election districts numbers 6 and 10, town of Huntington, the petitions and proofs upon which the writs of mandamus under review were granted failed to disclose any marks or indorsements upon ballots alleged to have been canvassed as protested, void or wholly blank ballots which were or might have been replaced in the box containing voted ballots. The legislature did not contemplate, neither is the statute susceptible of a construction which will justify the order of the court directing election officers to open the box of voted ballots months after the close of an election, examine the ballots contained therein, and, without any marks of identification appearing on said ballots, aided only by a recollection of the situation as it existed on the night of election day, endeavor to select the identical ballots declared void at the time of the canvass.

Inspectors of election, electors and the judiciary are familiar with the difficulties surrounding a determination of what constitutes a void ballot, and every officer having to do with the results of elections is slow to defeat

the intention of the voter. Controversy arises at nearly every election upon the vexatious question of void ballots. Inspectors of elections, and often the courts, do not always agree upon the question, yet the inspectors in the ninety-two districts under consideration have been commanded to identify the ballots adjudged by them as void on the night following the election, and make the required indorsements upon the ballots, even to a determination of the candidates, if any, for whom the same were counted. A ballot, otherwise valid, may be declared void if the voter incloses in the same a slip of paper. A ballot defaced or torn by a voter is a void ballot; if defaced or torn by an inspector it is not declared to be a void ballot. The two cases suggested illustrate the difficulty which may arise under a command such as has been issued in the case at bar. A valid ballot which was declared void by reason of a slip of paper folded within the same might be in the ballot box with the slip of paper missing. Ballots might be defaced or torn by inspectors in the counting and returned as valid ballots, others might have been torn by voters and declared void ballots. How can the inspectors months subsequent to the election make choice between the enumerated ballots?

While the courts may require public officers to perform a duty imposed upon them by law in cases like unto the cases presented, it would not only be next to impossible for inspectors to comply with the order of the court but the beneficent purposes of the statute might be defeated by an attempt to comply with such orders. The interest of the people and the rights of rival candidates will be the better preserved by restrictive privileges under the statute, so long as other remedies exist whereby the claims of individuals may be determined.

The conclusions we have reached in the cases at bar are in harmony rather than in conflict with the decision of this court in the case of *People ex rel. March* v. *Beam* (188 N. Y. 266). In that case at a village election but

one official ballot was prepared for the use of electors. It contained a party emblem and otherwise complied with the law. On the morning of election a large number of unofficial ballots were brought into the polling place. An elector objected to the use by the inspectors of any but the official ballots, and, again, at the close of the election, before any ballots were opened and any votes canvassed, each inspector of election was served with a written notice of protest against opening or counting unofficial ballots, and demanding in case they were opened and counted there should be indorsed upon each of said ballots "Objected to because marked for identification" and other requirements and be returned as void and protested ballots. Again during the canvass of the ballots the same request was made of the inspectors. The unofficial ballots secured the greater number of votes and application was made for a writ of mandamus commanding the inspectors to correct their certificate of canvass, make a correct certificate by deducting the votes counted upon the unofficial ballots, and that they indorse upon the unofficial ballots the protest and a statement and make a return and canvass as required by the Election Law, and that they properly proclaim the correct count and file such statement of canvass in the manner required by law.

The inspectors in that case did not return the unofficial and protested ballots in the package, but caused them to be locked up and sealed with the valid ballots voted, and the relator asked to have ballot boxes unlocked and to secure a proper disposition of void, protested and unofficial ballots. This court held that a recanvass of votes by the board of inspectors and a proclamation of the correct count could not be compelled by mandamus, citing *People ex rel. Brink* v. *Way* and *Matter of Hearst* v. *Woelper* (*supra*).

In the *March* case it will be observed there were but two kinds of ballots, the official ballot containing an emblem, indorsement, etc. and the unofficial ballot. No

difficulty could arise in the attempt by the inspectors to select the unofficial from the official ballots. They were as distinct in character, appearance and marks as possible for them to be, but such a situation does not exist in the case at bar. The principle laid down in that case would permit the court in the cases at bar in election districts like unto election district number 10 of the town of Huntington, where the petition alleges that there were inclosed in the envelope six void ballots while the return showed twenty-four had been canvassed for each office, and that the remaining eighteen ballots were tied in a separate bundle, marked " protested " and placed in the ballot box, to direct the ballot box to be opened, and if said remaining ballots were found in the separate bundle and marked " protested " to remove the same from the ballot box and place them in the envelope to be presented to the court upon the hearing of the original proceedings and if within the recollection of the inspectors to require that said ballots, so identified, be indorsed by them in the manner prescribed by the Election Law.

In all cases where the petition does not disclose that ballots canvassed as void or protested are so marked or identifiable as to permit the inspectors to immediately select said ballots from those in the box, the court is confined in the examination of the protested, void and wholly blank ballots to such ballots as are found in the envelopes. In any case, where the petitions disclose, as in the case of election district number 10 of the town of Huntington, that ballots protested, void or blank have been replaced in the ballot boxes in separate bundles so as to be capable of identification or properly indorsed as required by the Election Law, such ballots may be taken from the ballot boxes and returned to the envelopes.

Where ballots are found in the envelopes that were spoiled or canceled ballots, the court may order them marked as such and placed in the boxes where they properly belong.

Any marks or writings made by the inspectors upon ballots which may be removed from the ballot boxes should be preserved, and additional indorsement made thereon as directed under the order of the court should indicate that it was made pursuant to such order.

An order of the court should also be made providing for the preservation of all ballots used or cast at said election, so that the same may be available should any further action or proceedings be brought in the court, or in the event that the result of the election be reviewed before the House of Representatives.

We have endeavored to lay down a general rule for the guidance of the court at Special Term in the proceedings pending before it. Our conclusions result in a reversal, in whole or in part, of the orders in the several cases presented to us, and a remission of the cases to the Supreme Court for action in the proceedings in accordance with the views expressed in this opinion, with costs to the appellant in all courts in the single case which was argued, and disbursements in the remaining thirteen cases.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, CUDDEBACK, CARDOZO and SEABURY, JJ., concur.

Ordered accordingly.