## (December 29, 1964)

■ In the Matter of FRANK X. ALTIMARI, Appellant-Respondent, v. WILLIAM D. MEISSER et al., Constituting the Board of Elections of the County of Nassau, et al., Respondents, and JULIUS R. LIPPMAN, Respondent-Appellant. In the Matter of JULIUS R. LIPPMAN, Appellant-Respondent, v. WILLIAM D. MEISSER et al., Constituting the Board of Elections of the County of Nassau, et al., Respondents, and FRANK X. ALTIMARI, Respondent-Appellant.— In two proceedings under the Election Law (§ 330) for the judicial recanvass, review and recount of all the absentee and military ballots cast in the last general election for the office of District Court Judge of the County of Nassau, in the Third Assembly District, one proceeding having been brought by Frank X. Altimari, the candidate of the Republican party, and the other proceeding having been brought by Julius R. Lippman, the candidate of the Democratic party, the two rival candidates cross-appeal as follows from the separate judgments of the Supreme Court, Nassau County, entered December 17, 1964 in each proceeding, after a joint trial of both proceedings: (1) Lippman appeals from the judgments, which declared that his rival Altimari had been duly elected to the said office by a majority of 5 out of a total of 106,737 valid votes cast; and which directed the Board of Canvassers to amend its statement of canvass accordingly and the Board of Elections to certify Altimari's election. (2) Altimari appeals from the judgments to the extent that they declared void the absentee and military ballots marked for him, and declared valid the absentee and military ballots marked for his rival Lippman. Judgments, insofar as appealed from by the respective parties, affirmed, without costs. In our opinion, Altimari won the election by a majority of six votes. Special Term ruled the ballot to be invalid. We disagree. On the stub of this ballot the voter had placed his name and address. Unintentionally, the voter wrote "Bath, N. Y." on the upper right hand corner of the ballot portion. If the stub and that part of the ballot containing the words "Bath, N. Y." had been removed by the inspector, the ballot would not have been defaced or mutilated. Marks made unintentionally, inadvertently, or accidentally, do not invalidate a ballot (*Matter of O'Shaughnessy* v. *Monroe County Bd. of Elec.*, 15 A D 2d 183, 190, and cases cited). Hence, we consider this ballot to be valid. Special Term ruled the ballots referred to below to be invalid.

We agree with its rulings for the reasons stated: One ballot was received without a numbered stub. A stub is an integral part of the ballot (see, e.g., Election Law, § 202, subd. 2). Only an inspector may remove the stub. Where a voter removes the stub, he defaces or tears the ballot within the meaning of rule 1 of section 212 of the Election Law. The letter, signed by the voter and mailed together with his ballot, was sufficient to identify the voter and, therefore, the ballot is void. Two ballots were voted with a device popularly called "magic markers." Section 307 of the Election Law provides that a military voter shall mark his ballot in pen or pencil, or both. A "magic marker", whatever else it may be, is clearly not within the category of a pen or pencil. Therefore, the ballots are void. Certain ballots were cast by voters whose families no longer resided in the places where they had lived at the time of the voters' entry into military service. It is true that a person entering the military services does not lose or gain a residence by reason of such entry into the military service (Election Law, § 151). The ballots in question, however, were cast by voters who lost their residence, not by entry into military service, but by the removal from the district of the persons with whom they had lived before such entry into the military service. Under the circumstances, it may not be said that these voters lived in the district at the time of the election in question. Hence, these ballots were properly left unopened and properly remained uncounted for either candidate. Beldock, P. J., Kleinfeld, Hill and Rabin, JJ., concur; Ughetta, J., dissents and votes to reverse the judgments and to remit the two proceedings to the Special Term for further action consistent with the following memorandum: In my opinion, the proper determination to be made here hinges upon the votes, if any, cast in the three unopened military ballots. Accordingly, I vote to open them, to determine their validity and to declare the candidate elected in accordance therewith. The majority of this court have declared void the ballots described below. I deem them to be valid for these reasons: (1) A ballot was received without a stub. The stub is not a part of the ballot. The ballot itself, therefore, was not defaced. (2) A note advising that the voter had received and had destroyed a ballot in addition to the one which he used, does not render the ballot void within the scope of rule 1 of section 212 of the Election Law. The provisions of that rule apply generally to ballots. The rule is aimed at preventing insertion of a message within the folded ballot which is dropped into the box. It is not shown that this note, containing independent and material advice from an absentee or military voter, was within the ballot itself. (3) The election inspectors commingled military and absentee ballots. These commingled ballots must be presumed, in favor of their validity, to be military ballots. Military ballots may be marked in pen or pencil or both (Election Law, § 307). The provisions of the article of the Election Law (art. 12, §§ 300–319) dealing with voting by members of the armed forces are required to be construed liberally (Election Law, § 316). Two ballots were declared void as not marked with pen or pencil or both. Upon examination of these ballots, I cannot agree that they were not marked in accordance with law, namely, by devices not within the generic terms of pen and pencil. If the ballots discussed above were counted, as I think they should be, the margin of difference between the candidates would be two votes. An inspector of elections objected to three military ballot envelopes which have never been opened. With respect to two of such unopened ballots cast by a husband and wife, the inspector objected on the ground that the husband's parents had sold their (the parents') house and had moved from the district. It appears from the undisputed statement of one of the attorneys during the course of these proceedings that the husband had entered the military service prior

to November, 1960. As of the time of such entry he had resided with his parents at the voting premises and voted therefrom as a military voter in 1960 and 1962. The house was sold in December, 1962. There is only the testimony of the election inspector that the parents had moved away. There is nothing to support the conclusion that the husband and wife had moved with them. This husband did not lose his voting residence by entering the military service (Election Law, § 151). The question of domicile is one of fact (*Rubin* v. *Irving Trust Co.*, 305 N. Y. 288, 306). "The existing domicile, whether of origin or selection, continues until a new one is acquired and the burden of proof rests upon the party who alleges a change" (*Matter of Newcomb*, 192 N. Y. 238, 250; *Rawstorne* v. *Maguire*, 265 N. Y. 204, 208; see 17 N. Y. Jur., Domicile and Residence, § 52, pp. 52–55). No voter should be denied his valuable right to vote where the denial rests on uncertainty or upon inferences of a debatable character. "If there is ground for differing inferences the court should not interfere but should leave the voter to swear in his vote at his peril" (*Matter of Croen* v. *Bosco*, 2 A D 2d 696, 697). Hence, these two unopened ballots should be opened and their validity determined. The same inspector of elections objected to a third military ballot on the ground that she (the inspector) had never known of the voter's name in that district. She testified that a person sent by her to the house in question reported back to her that a person there claimed he was the owner and did not know the voter. There was a mailed-in registration for the military voter. There is nothing to show whether the house is a single or multifamily dwelling. Here again, the ballot should be opened and its validity determined, taking into consideration the presence or absence of a sworn statement of residence by the voter.