## THIRD DEPARTMENT, FEBRUARY, 1978

### (February 2, 1978)

■ In the Matter of ANTHONY C. RUFFO, Appellant, v ISRAEL MARGOLIS et al., Constituting the Board of Elections of Broome County, et al., Respondents.—Appeal from a judgment of the Supreme Court at Special Term, entered December 21, 1977 in Broome County, which, in a proceeding pursuant to section 330 of the Election Law,* declared respondent Andrews the elected Sheriff of Broome County by a majority of 63 votes. The initial tally following the November 8, 1977 election gave the respondent Andrews a plurality of less than 100 votes over the petitioner Ruffo out of a total vote of about 57,000 ballots. The candidates inspected the voting machine tallies and found no discrepancies. On November 17, 1977 there was a meeting for the purpose of canvassing and casting absentee ballots and ballots cast by

---

* Effective December 1, 1977, the Election Law has been revised and renumbered (L 1976, ch 233), but since this election took place prior to that date, references are to the former Election Law.

voters with registration poll cards missing on election day (Election Law, § 121, subd 4-a; § 274-a). At that time both parties objected to the canvassing of a group of 37 absentee ballots submitted by residents of the Binghamton Psychiatric Center and the Broome Developmental Center upon the grounds that residents of such centers are not entitled to cast absentee ballots as a matter of law and further that certain patients were physically able to vote in person at the polls on the election day. Following an administrative hearing, that objection was rejected by the board of elections. On November 19, 1977 the parties were permitted to examine all absentee and missing poll card ballots accepted by the board of elections at which time the petitioner made objections to various ballots, but such objections were rejected. This proceeding was commenced November 23, 1977 and in general seeks a review of the determinations made by the board of elections which were adverse to petitioner. Andrews appeared and answered on December 5, 1977 and by counterclaim seeks the review of certain ballots not contested by petitioner. Special Term accepted jurisdiction of all the absentee ballots and the special questions as to the filing of the group of 37 ballots by the above-described resident-patients and directed the parties to examine and raise specific objections that they might have at a hearing before the court. A hearing was held and Special Term found invalid 20 ballots cast for Andrews and 5 ballots cast for petitioner, resulting in a plurality of 63 votes for Andrews. The petitioner contends that, pursuant to section 117-a of the Election Law, residents of a "mental institution" may not qualify for an absentee ballot on the basis of "illness or physical disability and [confinement] * * * in the hospital or institution". Petitioner's brief notes that the term "mental institution" is not defined in the Election Law. Special Term found that patients in a mental institution may vote unless they were adjudicated incompetent and that there was no such showing in the present record. Upon the appeal, the petitioner does not contend that these residents had been adjudicated incompetent or otherwise were confined to any alleged "mental institution" by a judicial committment order. Since it appears that the resident patients were not disqualified from voting by former subdivision 6 of section 152 of the Election Law, the conclusion reached by Special Term that they were eligible for absentee ballots is proper. It should be noted that in the revised Election Law, effective December 1, 1977, all references to mental institutions have been deleted. Section 117-a of the Election Law provided at the outset in both its subdivisions 1 and 2 that they referred to "a qualified voter". There has been no showing that the residents of the institution herein were disqualified from voting because of mental illness and the construction of "mental institutions" to refer only to inmates otherwise disqualified is in accordance with the intent of said section 117-a to facilitate voting by qualified residents. (See, also, Mental Hygiene Law, § 15.01.) The further contention of the petitioner that as to the residents at the Broome Development Center there was proof that they could in fact have attended the polls on the election day was at most an issue of fact for the Special Term and has no further merit as raised on this appeal. Accordingly, Special Term did not err in finding that the 37 absentee ballots submitted by residents of the institutions were to be included in the canvass of ballots. The petitioner questioned several ballots before Special Term upon the ground that the entire ballot was void because there was a tear or corner fold. In *People ex rel. Brown v Freisch* (215 NY 356, 371) it was stated "[a] ballot defaced or torn by a voter is a void ballot; if defaced or torn by an inspector it is not declared to be a void ballot." There is no presumption that a torn ballot was

torn by the voter (People ex rel. Colne v Smith, 188 App Div 834). The burden was upon the petitioner to establish that the folds or tears were made by the voter and the adverse determination by Special Term is not against the weight of the evidence. The petitioner additionally contended that the whole ballot is void if there is an erasure on the ballot and seeks on that basis to exclude two ballots which appear to have erasures, but not in the Sheriff's column. While an erasure invalidates the vote for the office where the erasure is made, it does not invalidate the entire ballot unless it is determined to be an identifying mark, and on these ballots the "erasure" was not of such a nature (see Matter of O'Shaughnessy v Monroe County Bd. of Elections, 15 AD2d 183). Accordingly, the petitioner has not established any basis whereby this court should disturb the ruling of the Special Term as to folds, tears and/or erasures. The petitioner lists ballots which he sought to invalidate because of markings outside the voting square. In the case of Matter of Pavlic v Haley (40 Misc 2d 976, affd 20 AD2d 592, affd 13 NY2d 1111) this court affirmed a Special Term determination which found that a ballot having "a cross mark with several circles around it in the voting square" rendered the whole ballot void. At the hearing before Special Term there were no such identifying marks disclosed although there were either cross or check marks which in some cases extended beyond the edge of the square. As to those ballots, the mere extension beyond the square could properly be treated as an irregularity pursuant to the former section 212 of the Election Law. Some ballots had small stains or dots or pen marks which could not be identifying marks and as to many were not established as being made by the voter. It does not appear that any of the objections as to this group would have changed the result reached by Special Term. The petitioner in his brief lists some 41 ballots which he asserts are invalid because the "stubs" are torn off. These stubs contained certain instructions and there was a perforated line at the juncture of the stub and the ballot itself. In the present case there were about 96 such ballots apparently cast without the stubs. It is readily apparent that even if all 41 ballots complained of by petitioner were invalidated and additionally, the ballots invalidated pursuant to a cross claim filed by Andrews were again credited to petitioner, that Andrews would still be the winner by at least 17 votes and, accordingly, we do not pass on the issue as to the 41 ballots without stubs objected to by petitioner on this appeal or petitioner's objections to the counterclaim (cf. Matter of Altimari v Meisser, 22 AD2d 933, mod on other grounds 15 NY2d 686). Judgment affirmed, without costs. Sweeney, J. P., Kane, Staley, Jr., Larkin and Herlihy, JJ., concur.