### PEOPLE ex rel. STURTEVANT v. ARMSTRONG et al.

(Supreme Court, Appellate Division, Third Department. November 20, 1906.)

1. TOWNS—TOWN MEETINGS—CANVASSING VOTES AND DECLARING RESULT—DUTIES OF OFFICERS.

Under Laws 1890, p. 1218, c. 569, § 37, as renumbered by Laws 1897, p. 610, c. 481, and amended by Laws 1899, p. 321, c. 168, it is the duty of inspectors of a town meeting, when the polls are closed, to canvass the votes publicly, and of the clerk to read the result of the canvass to the persons there assembled and to enter the result at length in the minutes of the proceedings of the meeting.

2. MANDAMUS—ELECTION BOARDS—CANVASS OF VOTES.

The inspectors of a town meeting, while attempting to canvass the votes cast, being unable to decide as to the validity of certain ballots, placed them in a sealed box, without counting the votes or announcing the

result of the election, left the box in charge of the chairman, and referred the matter to the county judge, who refused to consider the matter because of want of jurisdiction. *Held*, that mandamus will lie to compel the inspectors to convene, open the box, and canvass the votes, and to the clerk to enter the result in his minutes and file the same in his office.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 154.]

**3. APPEAL—OBJECTIONS NOT URGED BELOW.**

The statement of appellant's counsel on the trial, in proceedings to obtain a mandamus, as to his understanding of the law, will not estop him on appeal from urging that the law is not in harmony with that understanding.

**4. MANDAMUS—ELECTION BOARDS—CANVASS OF VOTES—SCOPE OF RELIEF.**

The relief sought in a proceeding to obtain a writ of mandamus was to compel the inspectors of a town meeting to make and sign an original statement of the canvass of the votes at such meeting and the clerk to enter the result. *Held* that, the inspectors having failed to count the ballots and such count being a necessary preliminary to obtaining the relief sought, counting the ballots is within the prayer of the petition.

Appeal from Special Term, Essex County.

Proceeding by the people of the state of New York, on the relation of William Sturtevant, against Christopher Armstrong and others, to obtain a writ of mandamus. From a final order dismissing the alternative writ, relator appeals. Reversed.

The relief sought by this proceeding is a peremptory writ of mandamus to the defendants Armstrong, Deyo, and Harrington, as inspectors of the town meeting held in the town of North Hudson, Essex county, on the 7th day of March, 1905, to make and sign an original statement of the canvass of the votes thereof, showing the result of the election of officers at said town meeting, and requiring the defendant Carson, as clerk of said meeting, to enter the result in his minutes and file the same in his office. On the trial of the issues raised by the return to the alternative writ of mandamus, such writ was dismissed, and from such final order of dismissal the relator has appealed.

Argued before PARKER, P. J., and SMITH, CHESTER, COCHRANE, and KELLOGG, JJ.

Fred W. Dudley, for appellant.
Francis A. Smith, for respondents.

CHESTER, J. This proceeding is prosecuted by the relator on the theory that there had been a complete canvass of the votes cast at the town meeting in question, and that there had been a failure on the part of the town officers presiding at the town meeting to make and file a statement of the result thereof. At such town meeting the defendant John R. Carson and the relator William Sturtevant were candidates, respectively, for the office of supervisor. There was no contest for any office except supervisor and town clerk. The defendant Armstrong was chairman of the board of inspectors. After the polls were closed and the ballot box opened, it was found that the number of ballots cast was 144, which agreed with the poll list. Armstrong unfolded the ballots and separated them into three piles, in one of which he put those about which he thought there was some question as to their validity, in another those understood to be for Carson, and in a third those understood to be for Sturtevant.

It is claimed by the relator that these piles were counted by the inspectors and found to contain 9 defective ballots, 68 for Sturtevant,

and 67 for Carson, and that such result was announced. But the great weight of the evidence is that while the piles were counted, before any agreement had been reached by the board as to the number of ballots that should be allowed to either candidate, a dispute arose as to the validity or invalidity of several of the ballots. One of those regarded as void bore the printed name of John R. Carson for supervisor, and also his name in pencil in the blank voting space, with a cross-mark in the circle at the head of the official ballot containing his printed name and a cross-mark in the voting space at the left of his penciled name. Another was a torn ballot placed by Inspector Armstrong in the Sturtevant pile. At least four other ballots in such pile, and included in the 68 above mentioned, were for "Sturdy," with different Christian names or initials.

The court has found as facts "that there was no count or determination by the board of inspectors as to the number of ballots for John R. Carson or William Sturtevant, respectively;" that there was no count or canvass of the vote for supervisor, for town clerk, or for any other candidates for any other town office; and that no entry of the count or canvass was made. The court has further found that the inspectors left the count for supervisor entirely undetermined; that, pursuant to the vote of the inspectors, "all the questions in relation to the said count as to the torn ballot, the penciled ballot, and the ballots for one 'Sturdy,' and the number of ballots that should be reckoned for the respective candidates for supervisor, were left to the final determination of the county judge; that the inspectors, in good faith and in the sincere belief that the said county judge could determine finally the said questions in relation to the said count, submitted said questions to him; that he declined to determine the same on the ground of want of jurisdiction; that no return was made and no certificate filed as to any action or result of said town meeting." It appears that all of these findings have ample support in the evidence. All the ballots voted at said town meeting were by an agreement of the inspectors put in a box and sealed up and left in the custody of the chairman of the board, where they have ever since remained under such seal. The trial court held that it had no jurisdiction to order a recount of the ballots contained in such box, for either of the candidates for supervisor, town clerk, or for any other town office, and dismissed the writ.

According to the findings and the evidence the inspectors have neither counted nor canvassed the ballots, nor has any result been entered in his minutes by the town clerk. It was the duty of the inspectors under the law, as soon as the polls were closed, to canvass the votes publicly at the place where the town meeting was held, and it was the duty of the clerk to read the result of the canvass to the persons there assembled and to enter the result at length in the minutes of the proceedings of the meeting kept by him. Town Law, Laws 1890, p. 1218, c. 569, § 37, as renumbered by Laws 1897, p. 610, c. 481, and amended by Laws 1899, p. 321, c. 168. Instead of performing these duties imposed upon them by law, they adjourned for the purpose of referring the disputed matters to the county judge, and three days later called upon him for that purpose, and he declined to interfere, as he had no jurisdiction. The case seems to fall within the principle of

People ex rel. Smith v. Schiellein, 95 N. Y. 124, where Chief Judge Ruger, in writing the opinion, says:

"It appeared upon the occasion in question that they (the inspectors) met at the time and place appointed, but entirely neglected to canvass the votes for the office of justice of the peace. In this, we think, they omitted a duty which was imperatively enjoined upon them by the statute, and to the benefit of the performance of which the relator was clearly entitled. * * * There is no reason why they should not be required to return and complete the duty with which they are charged. It would be a reproach to the laws to hold that an election to office by the people could be defeated by the neglect or refusal of the canvassers to perform the official duty of canvassing votes cast at an election. It is one of the peculiar functions of the writ of mandamus to meet and remedy the evils which would result from such a neglect of official duty."

There is nothing in the subsequent cases of People ex rel. Brink v. Way, 179 N. Y. 174, 71 N. E. 756, or Hearst v. Woelper, 183 N. Y. 274, 76 N. E. 28, which in any wise impairs the authority of the Smith Case. In each of these subsequent cases there had been a completed canvass and a result certified, which it was sought to change by a recount, while in the Smith Case, as well as in the one we are considering, there had been no count, canvass, or declared result.

It is not questioned here that the ballots are intact and in the same condition as when they were sealed in the box on the night of the election. No reason is apparent, therefore, why the inspectors and clerk should not be required to convene and open the box and discharge the duties imposed upon them by law.

We are also of the opinion that the statement of the appellant's counsel on the trial as to his understanding of the law is not effective as an estoppel to prevent him from here urging that the law is not in harmony with that understanding. Chatfield v. Simonson, 92 N. Y. 209, 218.

There is also a question as to the form of the mandamus asked for, which is one to compel the inspectors to declare and the clerk to enter the result, instead of one directing the inspectors to count the ballots. They having failed to count, and such count being a necessary preliminary to a declaration of the result, such relief is fairly within the prayer of the petition, and the proceeding should not fail because the petitioner has mistaken to some extent the relief to which he is entitled. People ex rel. Keene v. Supervisors, 142 N. Y. 271, 36 N. E. 1062.

The final order should be reversed, with costs, and upon the facts found by the trial court a peremptory writ of mandamus granted, without costs, directed to the defendant inspectors to convene at a time and place stated and open the ballot box and canvass the votes therein, and to the defendant clerk to enter the result at length in his minutes and file the same in his office. All concur.