FULTON COUNTY PUB. CO. v. COMMON COUNCIL OF CITY OF JOHNSTOWN.

(Supreme Court, Special Term, Montgomery County.    March, 1916.)

1. NEWSPAPERS ⬦⟜1(1)—DESIGNATION OF OFFICIAL PAPERS—EFFECT.
    The designation of a newspaper as the official newspaper of a city and the agreement of the publisher to make publications at the fees prescribed by the common council constituted a contract, which was broken on discontinuance of the paper and failure to make publications without consent of the common council, following destruction of the publisher's plant by fire.
    [Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 1, 2; Dec. Dig. ⬦⟜1(1).]

2. NEWSPAPERS ⬦⟜1(6)—DESIGNATION OF OFFICIAL PAPERS—REVOCATION.
    Where the original designation of a newspaper as an official newspaper for one year was duly made, it could not be revoked.
    [Ed. Note.—For other cases, see Newspapers, Cent. Dig. § 13; Dec. Dig. ⬦⟜1(6).]

3. NEWSPAPERS ⬦⟜1(1)—DESIGNATION OF OFFICIAL PAPERS—POWER OF CITY COUNCIL.
    Where a city charter provided for designation of two official newspapers, respectively, by members of the two leading political parties in the common council, but made no provision in case of the discontinuance of one of the papers chosen, the power to select another in its place belonged alone to the common council under its general powers.
    [Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 1, 2; Dec. Dig. ⬦⟜1(1).]

4. NEWSPAPERS ⬦⟜1(3)—DESIGNATION OF OFFICIAL PAPERS—PARTY REPRESENTED.
    The common council of a city, whose charter required two official newspapers representing the two leading political parties, in designating a paper by virtue of the council's general powers to take the place of one whose publication had been discontinued, must comply with the charter

⬦⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

requirement as to the political party represented by the newspaper select ed, if possible.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. § 10; Dec. Dig. ☞1(3).]

5. NEWSPAPERS ☞1(3)—DESIGNATION OF OFFICIAL PAPERS—REQUIREMENTS— WEEKLY OR DAILY PUBLICATION—"PUBLISHED * * * WEEKS."

Neither Johnstown City Charter, § 74, requiring notice of sale of bonds to be published in the official newspapers for at least three weeks prior to the sale, section 104, requiring notice of hearing of objections to assessments by publishing them at least one week in the official newspapers, section 133, requiring public notice in the official papers for one week of an assessment roll for improvements, nor any other section of the charter requires daily publications in the official newspapers; the sections enumerated requiring only that the time specified shall intervene between the publication and the date referred to.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. § 10; Dec. Dig. ☞1(3).]

6. NEWSPAPERS ☞1(3)—DESIGNATION OF OFFICIAL PAPERS—BREACH OF FORMER CONTRACT.

That the publisher of the only newspaper eligible to designation as official newspaper of a city to take the place of another discontinued newspaper was the owner of such discontinued paper, and had broken his contract with the city with regard to such paper, does not affect his right to designation of the paper he publishes, in the absence of a showing of damages from breach of the former contract, or that he is able to pay if the damages are shown.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. § 10; Dec. Dig. ☞1(3).]

7. NEWSPAPERS ☞1(4)—DESIGNATION OF OFFICIAL PAPER—MANDAMUS— PLEADING—PRAYER FOR RELIEF.

On a petition for mandamus, a prayer that the common council of the city be required to make publications in the newspaper of the relator, and "for such other and further relief as may be just and proper," authorizes the court to render a judgment that the wrongful designation of the newspaper be rescinded, and to mold the relief according to the rights of the parties.

[Ed. Note.—For other cases, see Newspapers, Cent. Dig. §§ 4–8, 11; Dec. Dig. ☞1(4).]

Application by the Fulton County Publishing Company for a writ of mandamus against the Common Council of the City of Johnstown. Peremptory writ granted.

F. E. Moyer, of Johnstown, for applicant.
Edwin Baylies, of Johnstown, for respondent.

WHITMYER, J. The Fulton County Publishing Company, a corporation which owns and publishes the Fulton County Democrat, a weekly newspaper, of the city of Johnstown, N. Y., is asking for a peremptory writ of mandamus, requiring the common council of said city to recognize the designation, made by the Democratic members of said council on April 27, 1915, and May 8, 1915, of said paper as one of the two official newspapers of said city, and to cause all notices, ordinances, by-laws, rules, and regulations of said council and of all boards and officials of said city to be published therein, and for such

other and further relief as may be just. In January, 1915, the Republican members of; said council designated the Leader-Republican, a daily newspaper .printed and published in the city of Gloversville, N. Y., and circulated in both cities, as one of the two official newspapers of said city of Johnstown, and its publishers agreed with said council to make publications at the fees theretofore prescribed by said council. At that time no newspaper representing the Republican party was printed in said city of Johnstown. At the same time the Democratic members of said council designated the Evening Telegram, a daily newspaper printed and published in said city of Johnstown, as one of the two official newspapers of said city, and its publishers agreed with said council to make publications at the fees theretofore prescribed by said council. The Republican party and the Democratic party were then and are now the two principal political parties of said city and the designations were made for the ensuing official year, pursuant to section 57 of the City Charter. That of the Leader-Republican is not questioned. The Telegram was then owned and .published by relator, which at the same time owned and published the Democrat, then a semiweekly. After its designation, publications were made in the Telegram, as required, until March 29, 1915, when the plant of the company was destroyed by fire. Thereupon the publication of the daily was discontinued, and the semiweekly was changed to a weekly. About a month later, the Democratic members of the council designated the weekly in place of the daily, and the company accepted. The council did not recognize that designation, but designated the Morning Herald, a newspaper which represents the National Progressive party, is printed and published in the city of Gloversville, and is circulated in both cities. Hence this proceeding.

[1-4] The designation of the Telegram and the agreement on the part of the Publishing Company to make publications at the fees prescribed by the common council of the city constituted a contract between the company and the city; and the fire did not affect the contract, so that the discontinuance of the daily and the consequent failure of the publishing company to make publications therein, as agreed, without the consent of the common council, constituted a breach of the contract on the part of the publishing company. The original designation of the Telegram was duly made and could not thereafter be revoked. People v. Monroe County Supervisors, 60 Hun, 328, 14 N. Y. Supp. 867; Matter of Troy Press Co., 94 App. Div. 514, 88 N. Y. Supp. 115. And the discontinuance of a designated paper during an official year was not contemplated, and the manner of taking action thereupon was not provided for by the City Charter. So that, the later designations made by the Democratic member of the common council were unauthorized. In the emergency, the common council alone was authorized to act, under its general powers. That body, however, could not make any designation it pleased, but was required to make one which would comply with the requirements of the charter, if that could be done. People ex rel. Bonheur v. Christ, 208 N. Y. 6, 101 N. E. 846. It designated the Morning Herald, which then represented and now represents the National Progressive Party,

and which then was and now is printed and published in the city of Gloversville.

[5] At that time the Fulton County Democrat was, and it is now, the only Democratic paper printed and published in the city of Johnstown, and in fact in the county of Fulton. While it is a weekly paper, yet the charter does not in any of its sections require daily publications. The only possible questions in this respect arise with reference to sections 74, 104 and 133 of the charter. Section 74 relates to the issue of bonds, and provides that:

"They shall be sold on sealed proposals or at public auction upon notice published in the official newspapers for at least three weeks prior to the time of such sale or the opening of such proposals."

That means that at least three weeks shall intervene between the publication and the sale or the opening of proposals. People ex rel. Hetfield v. Trustees, 70 N. Y. 28, 32. Section 104 relates to the completion of the revised assessment roll by the assessor, and requires him to give public notice that he will attend at the end of ten days, at a time to be designated by him, to hear objections and to correct errors, "by publishing the same at least one week in the official newspapers of the city." And section 133 relates to the assessment roll for improvements, and provides that the city engineer shall prepare it and a duplicate thereof, both to be deemed originals, and leave same at the office of the city clerk, and thereupon "give public notice in the official papers for one week" that the same has been prepared and will remain at the office of the city clerk for fifteen days from the date of such notice for examination.

[6] Under the last two sections, the acts are not to be performed in less than a week from the time of publication, but more than a week will intervene in each case. And while relator is the company which owned the Telegram, and therefore failed to carry out its contract with the city, the papers do not show that the city has been damaged, or that relator cannot pay, if it has. So that the Democrat could and should have been designated and the designation of the Herald was illegal.

[7] And, finally, while relator does not ask that the designation of the Herald be rescinded, it does ask that the council be required to make publications in the Democrat, and then asks "for such other and further relief as may be just and proper," so that the relief may be molded according to the rights of the parties. People ex rel. Henry v. Nostrand, 46 N. Y. 377; People ex rel. Keene v. Queens County Supervisors, 142 N. Y. 271, 36 N. E. 1062; People ex rel. Sturtevant v. Armstrong, 116 App. Div. 103, 101 N. Y. Supp. 712.

Peremptory writ accordingly.