In the Matter of the Application of FRED BONACKER under Article 78 of the Civil Practice Act, Petitioner, against BENJAMIN CHUCKROW and Others, Respondents.

Supreme Court, Rensselaer County, February 10, 1938.

*Wiswall, Walton, Wood & MacAffer* [*Kenneth S. MacAffer* of counsel], for the petitioner.

*T. Stewart Hubbard,* for the respondents.

BERGAN, J. This proceeding is brought in pursuance of article 78 of the Civil Practice Act. The petitioner alleges that at the general election in 1937 he was elected supervisor for the second supervisor district of the city of Rensselaer and that he has qualified as such. In support of the allegation of his election there is attached to the petition a copy of the proceedings of the common council of the city of Rensselaer, which is constituted as the city board of canvassers in canvassing the vote at city elections.

The first prayer for relief is for an order enjoining the respondents, who, when organized, would constitute the county board of supervisors, and the respondent McNally, as clerk of the board, from organizing or transacting any business as such board without due notice to the petitioner. Relief by injunction is not within the scope of article 78 of the Civil Practice Act. A meeting or organization of a legislative body without notice to a member, if petitioner's election be conceded, is not an act in excess of jurisdiction or without jurisdiction within the scope of subdivision 2 of section 1296 of the Civil Practice Act. Its " jurisdiction " to meet or organize is not circumscribed in any statutory sense, as far as I am able to ascertain, by a requirement imposed upon the other members to give notice to one of their number, or by a requirement that the clerk give notice of such a meeting. The validity of acts performed at such a meeting is beside the point. A meeting without notice to a member is not an act " in excess of jurisdiction." It would not be within the scope of the former remedy of prohibition to halt by judicial process the gathering of a legislative or *quasi*-legislative body upon such a theory and it is not within the scope of the successive remedy now provided by the second subdivision of section 1296. The board of supervisors in meeting or organizing is not performing a judicial or *quasi*-judicial function, but one which is legislative or administrative. The practice applicable to actions is available in this proceeding (Civ. Prac. Act, § 1306), but the petition is barren of any allegation of facts which would entitle the petitioner to a temporary injunction during the pendency of the proceeding within section 878 of the Civil Practice Act. The remaining relief sought is for a direction to the respondent McNally, as clerk of the board, to notify the petitioner of the time and place of any meeting of the board of supervisors, and for an order directing him as clerk to place the petitioner's name on the roll call of meetings of such board.

The specific allegation of the petition is that the respondent McNally failed to send petitioner a notice of the meeting of the board of January 11, 1938. The time and place of this meeting was concededly known to the petitioner at the time of the institution of this proceeding, since it is alleged in the petition. The official notice to the petitioner for that meeting has now become academic. Moreover, I fail to find any statutory duty devolving upon the clerk to give such a notice to each member of the board, although the respondent McNally admits the allegation of the petition that each other member of the board received, at his instance, a copy of the notice of the meeting of January eleventh.

Accordingly, I think, it cannot be said that, in failing to send petitioner notice of said meeting, the clerk McNally " failed to perform a duty specifically enjoined on him by law " within subdivision 1 of section 1296 of the Civil Practice Act, which is the successor to the former provisions for remedy available by mandamus, or can it be said that " any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner " within the fifth subdivision of the same section which, substantially, is the successor to the former provisions for certiorari. But if both of these questions be resolved favorably to the petitioner's contention, it cannot be said on any possible theory that the neglect, failure or refusal of the clerk to send such notice was a final determination of the rights of the petitioner in the premises, especially of his right to sit as a member of and participate in the deliberations of the board of supervisors. Stated in other language, the mere act of the clerk in sending notice of meetings or in failing to send notice, would not be determinative of the petitioner's rights as a member of the board, either if viewed as an independent act of the clerk or if the notice was sent by the clerk under the coercive power of this court, especially where the right to such a notice is not clearly a statutory incident in the exercise of the powers and duties of his public office, or in the rights arising therefrom.

The same limitations occur in respect of the further relief sought by the petitioner to require the clerk to place his name on the roll call of all meetings convened or held by the board of supervisors, and there here exists the additional reason that there is no allegation in the petition that the respondent McNally has refused or neglected to perform this function.

If the petitioner has the present record title to this office, or hereafter acquires it, there should be, and I think there is, some direct means available to him, other than the collateral and inconclusive means here attempted, to prevent any one from interfering with

the exercise of his rights and duties in the office and his participation in the deliberations of the board.

When the petition is considered in its entirety, and read in connection with the certified copy of the city board of canvassers of the city of Rensselaer, which is attached to the petition as Exhibit A, and upon which the petitioner relies in his contention that he was elected to the office, it would seem doubtful if the petition, on its face, shows the petitioner to have the present record title to the office. The imperfection in the record title arises from the fact that the city board of canvassers neglected to perform the plain duty cast upon them by law. The canvass in the city of Rensselaer is governed by a special statute (Laws of 1915, chap. 69). This is the charter of the city of Rensselaer. While the office of supervisor appears under the section heading " Elective City Officers Enumerated " (§ 12), the supervisors are not expressly declared to be elective officers of the city, but are " elective officers of the respective supervisor districts herein created." The text of the section both before and after this provision deals with " elective officers of the city," but since each of the supervisor districts created by the charter is wholly within the city of Rensselaer, and when the provisions are considered in connection with section 14, I think it was the intention of the Legislature to provide that the election of supervisors in such districts should be canvassed in the same manner as officers expressly designated as " elective officers of the city " and that the record title flowing from elections in said supervisor districts should be determined from the canvass of the city board of canvassers in the same manner as that of city officers. I point this out for the reason that, while it is the duty of the city board of canvassers to canvass the votes cast for all elective officers in any election in the city of Rensselaer, including those officers who are voted upon by units beyond the city limits, the record title to offices could only become wholly dependent upon the canvass by the city board of canvassers in the case of city officers, or officers elected wholly within the city.

Under the title of " Canvass of Votes at Annual City Election," section 14 of the charter fixes in plain language the duties of the city board of canvassers. It is provided that the common council of the city " shall meet as a board of city canvassers on the Thursday evening at eight o'clock, following each annual election." It is required that the board shall canvass the tally sheets and certified statements of the election received from the several election districts of the city. The board is then required to do three things: to determine and declare (a) the whole number of votes cast for all the candidates for each office to be elected at such election;

(b) the number of votes cast for each said candidate; (c) which person was elected to each office respectively.

The statute further provides that the persons having the greatest number of votes for each office to be filled by the supervisor districts shall be duly elected to such offices. These determinations and declarations by the board become the official record of the title to the office and no " certificate of election " is required to perfect that title. The record of the canvass in the second supervisor district is as follows: " The number of votes cast for Supervisor of the second district for Benjamin Carson was 1,237 and 8 by the Socialist party, for Fred Bonacker 1,343 giving Fred Bonacker a majority of 98, pending the investigation of the voting machine in the first district of the sixth ward."

This canvass constitutes an equivocal and conditional statement of the number of votes cast for each candidate. It does not " determine and declare " the number of votes cast, except with a reservation which seems to me to destroy the determination. Particularly, the board does not determine and declare which person was elected to the office. That determination and declaration may be said to follow from the figures as canvassed, but it is the duty of the board of canvassers, nevertheless, to make the declaration of election, and I think the record title to the office cannot be deemed perfected until the number of votes has been made unequivocal and the declaration of the person elected has been made. The duty of the city board of canvassers is plainly fixed by law and is wholly ministerial. There is not the slightest latitude for the exercise of discretion, judgment or reservation. The canvassers must examine the face of the returns of the inspectors of election, count the votes as they are thus disclosed and declare those officers elected who are shown by such returns to have had a plurality of votes.

Their duty is not susceptible of misconstruction. They have neglected to perform their duty and, until they do perform it, the remedy of the petitioner to enforce his rights as a record holder to the office must remain in some doubt. The time to commence a summary proceeding to determine a question of law or fact arising from the canvass of returns by the city board of canvassers under subdivision 5 of section 330 of the Election Law has now expired. The Supreme Court has no inherent jurisdiction in election matters or power to review a canvass of results except as provided by the Election Law (*Matter of Hearst* v. *Woelper*, 183 N. Y. 274; *People ex rel. Brink* v. *Way*, 179 id. 174; *Matter of Tamney* v. *Atkins*, 209 id. 202), but the power of the court to compel by mandamus the performance of a ministerial duty which

election officials have neglected or refused to perform has always been recognized and the jurisdiction of the court in such a matter is not limited to the summary powers provided by the Election Law. (*People ex rel. Smith* v. *Schiellein,* 95 N. Y. 124, 132, 133. See, also, *People ex rel. Sturtevant* v. *Armstrong,* 116 App. Div. 103.)

Accordingly, the motion of the petitioner is denied and the petition dismissed without prejudice to the institution of such further proceeding as he may be advised and without costs.

Submit order.